George H. Kalikman (CSBN 147382)
Melissa S. Lor (CSBN 245515)
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, CA 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785
Email: gkalikman@schnader.com
      mlor@schnader.com

Jennifer A. Smith (Nev. Bar No. 610)
LIONEL SAWYER & COLLINS
1100 Bank of America Plaza
50 West Liberty Street
Reno, NV 89501
Telephone: 775-788-8666
Facsimile: 775-788-8682
Email: jsmith@lionelsawyer.com
(*Pro Hac Vice Application Pending*)

Attorneys for International Game Technology, Creditor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>HI FIVE ENTERPRISES, LLC, a California limited liability company; ONE SOUTH LAKE STREET, LLC, a Nevada limited liability company; and WILD GAME NG, LLC, a Nevada Limited liability company d/b/a The Siena Hotel Spa & Casino,<br><br>           Debtors. | Case No. 4:10-bk-48268-RJN<br><br>[Jointly Administered with Case Nos. 4:10-bk-48272-RJN and 4:10-48270-RJN]<br><br>Chapter 11<br><br>**MOTION FOR ENTRY OF ORDER TRANSFERRING VENUE TO THE DISTRICT OF NEVADA**<br><br>Date: September 29, 2010<br>Time: 11:30 a.m.<br>Place: Courtroom 220<br>       1300 Clay Street, Suite 300<br>       Oakland, CA 94612<br>Judge: Hon. Randall J. Newsome |

MOTION FOR ENTRY OF ORDER TRANSFERRING VENUE TO THE DISTRICT OF NEVADA

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 WEST LIBERTY ST.
RENO, NEVADA 89501
(775) 788-8666

Case: 10-48268    Doc# 41    Filed: 08/05/10    Entered: 08/05/10 10:05:53    Page 1 of 19

# TABLE OF CONTENTS

Page

I. INTRODUCTION……………………………………………………………...……1

II. JURISDICTION AND VENUE ……………………………………………………1

III. FACTUAL BACKGROUND…………………………………………………….…..2

IV. RELIEF REQUESTED……………………………………………………………..4

V. BASIS FOR RELIEF REQUESTED……………………………………………...5

    A. While Venue in California is Technically Proper Under 28 U.S.C. § 1408, The Cases Should Be Transferred to Nevada Pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)……………………………………………………………5

    B. The Interest of Justice and the Convenience of the Parties Dictate that the Court Transfer the Bankruptcy Cases to the Nevada Bankruptcy Court………………...6

        1. The Court Should Transfer the Bankruptcy Cases to the Nevada Bankruptcy Court for the Convenience of the Parties……………………6

            a) The Proximity of Creditors to the Nevada Bankruptcy Court Favors Transfer to Nevada……………………………………………8

            b) The Proximity of the Debtors and Witnesses Necessary for Administration of the Estate Favors Transfer to Nevada……..…...9

            c) The Location of the Debtors' Assets Heavily Favors Transfer to Nevada………………………………………………………..…....9

            d) Venue in Nevada Promotes Economic and Efficient Administration of the Cases……………………………………...11

            e) Local Considerations Warrant Transfer to Nevada…………...11

            f) Necessity for Ancillary Administration…………………………12

        2. The Court Should Transfer the Bankruptcy Cases to the Nevada Bankruptcy Court in the Interest of Justice………………………………13

            a) Nevada Has a Strong Interest in Having These Bankruptcy Cases Adjudicated Within its Borders…………………………………14

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,

**TABLE OF CONTENTS**
**[Continued]**

      b) Retention of the Case in California Would Reduce Participation and Frustrate Justice……………………………………………………..14

VI. CONCLUSION……………………………..…………………………………….15

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Donald v. Curry (In re Donald)*,
    328 B.R. 192 (B.A.P. 9th Cir. 2005)……………………………………………………...6

*Enron Crop. v. Arora (In re Enron Corp.)*,
    317 B.R. 629 (Bankr. S.D.N.Y. 2004) ………………………………………………….14

*Hertz Corp. v. Friend et al.*,
    559 U.S. ___, 130 S. Ct. 1181 (2010)………………………………………………...….5

*Hotel Employees & Rest. Employees Int'l Union v. Nev. Gaming Comm'n*,
    984 F.2d 1507 (9th Cir. 1992)…………………………………………………………...10

*In re Abacus Broad. Corp.*,
    154 B.R. 682 (Bankr. W.D. Tex. 1993)………………………………………………..7, 8

*In re B.L. of Miami Inc.*,
    294 B.R. 325 (Bankr. D. Nev. 2003)……………………………………………….....….5

*In re Dunmore Homes, Inc.*,
    380 B.R. 663 (Bankr. S.D.N.Y. 2008)……………………….…………............6, 7, 11, 13

*In re Enron Corp.*,
    284 B.R. 376 (Bankr. S.D.N.Y. 2002)………………………………………………...12

*In re Greenridge Apartments*,
    13 B.R. 510 (Bankr. D. Hawaii 1981)…………………………...………....……...10, 12

*In re Kona Joint Venture I, Ltd.*,
    62 B.R. 169 (Bankr. D. Hawaii 1986)……………………………………………….....10

*In re Macatawa Hospitality, Inc.*,
    158 B.R. 82 (E.D. Mich. 1993)…………………………………………………………11

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,

# TABLE OF AUTHORITIES
### [Continued]

*In re National Consumer Mortg. LLC.*,
    2010 WL 2384217 (C.D. Cal. June 10, 2010)……………………………………………..14

*In re Newport Creamery*,
    265 B.R. 614 (Bankr. M.D. Fla. 2001)……………………………………………..7, 12

*Puerto Rico v. Commonwealth Oil Ref. Co.* (*In re Commonwealth Oil Ref. Co.*),
    596 F.2d 1239 (5th Cir.1979) *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732 (1980)……….6

*Tig Ins. Co. v. Smolker*,
    264 B.R. 661 (Bankr. C.D. Cal. 2001)……………………………………………………6

## STATUTES

28 U.S.C. § 1408………………………………………………………………………..3, 5

28 U.S.C. § 1412………………………………………………………..….1, 2, 5, 6, 13, 15

28 U.S.C § 1334…………………………………………………………………………...1

28 U.S.C. § 157…………………………………………………………………………….1

## RULES

Fed R. Bankr. P. 1014…………………………………………………………………..1, 2, 4

Fed. R. Bankr. P. 1015……………………………………………………………………….2

International Game Technology ("IGT"), creditor of Debtor and Debtor-in-possession Wild Game Ng, LLC, hereby moves the Court (the "Motion") for entry of an order transferring venue of the above-captioned bankruptcy cases to the unofficial Northern Division of the U.S. Bankruptcy Court for the District of Nevada located in Reno, Nevada (the "Reno Bankruptcy Court"). This Motion is made and based on 28 U.S.C. § 1412 and Fed.R.Bankr.P. 1014, as well as the following memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The factors governing transfer pursuant to 28 U.S.C. § 1412 dictate that the above-captioned Chapter 11 bankruptcy cases should be transferred to the Reno Bankruptcy Court. The decision of Wild Game Ng, LLC ("Wild Game") and One South Lake Street, LLC ("One South") both doing business as "The Siena Hotel Spa & Casino" along with Hi-Five Enterprises, LLC ("Hi-Five") (hereafter collectively referred to as the "Debtors" or the "Siena") to file in California operates to inconvenience the parties in interest and is at odds with the interest of justice.

These cases involve the reorganization of the Debtors' primary asset and business enterprise, The Siena Hotel Spa & Casino, which is located and operated in Reno, Nevada. By any measure, venue of these cases belongs in northern Nevada. All of the Debtors' business operations take place in northern Nevada, and all the properties owned and operated by the Debtors are located in northern Nevada. The Debtors could have and should have filed these cases in Nevada, as their ties to California are few and tenuous. Moreover, these cases will involve application of complex and nuanced statutory and regulatory law specific to Nevada's gaming industry. The interest of justice and the convenience of the parties will be better served if the cases are transferred to the Reno Bankruptcy Court. Simply put, these cases do not belong in Oakland, California -- they belong in Reno, Nevada.

### II. JURISDICTION AND VENUE

This Court has jurisdiction over this Motion by virtue of 28 U.S.C § 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). The statutory predicate for

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,

1
MOTION FOR ENTRY OF ORDER TRANSFERRING VENUE TO THE DISTRICT OF NEVADA

Case: 10-48268    Doc# 41    Filed: 08/05/10    Entered: 08/05/10 10:05:53    Page 5 of 19

the relief requested herein is 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014.

### III. FACTUAL BACKGROUND

On July 21, 2010, each of the Debtors commenced a voluntary case under Chapter 11 in this Court. The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015. Since the petition date, the Debtors continue in possession of their properties and continue to operate the Siena pursuant to Bankruptcy Code §§ 1107(a) and 1108.

IGT is listed as one of the twenty largest unsecured creditors of Wild Game. IGT is a Nevada corporation engaged in the business of manufacturing and distributing gaming devices and related equipment. In 2001, IGT and the Siena entered a series of written contracts pursuant to which the Siena purchased or otherwise acquired the right to use various IGT gaming machines. In October of 2004, IGT sued the Siena in the Second Judicial District Court in Washoe County, Nevada (the "district court") to collect the amounts due under the various contracts (approximately $3.7 million by the time of the July, 2007 trial), and later, to retake possession of the equipment acquired by the Siena under these contracts. On January 30, 2008, the district court entered judgment against the Siena awarding IGT in excess of $4.2 million, plus additional daily interest that continues to accrue.[1] The judgment was recorded in Washoe County on August 8, 2008 (the "Judgment").

Following entry of the Judgment, the district court entered an order granting a new trial on certain counterclaims, but upholding the directed verdict on IGT's claims and the remaining counterclaims. IGT appealed the ruling. As the prevailing party, IGT also filed a Motion for

---

[1] The judgment awarded IGT (1) $886,829.30 on its claim for breach of the August 3, 2001, Equipment Contract, plus prejudgment interest of $1,224,753.40, through September 20, 2007, plus additional daily interest that continues to accrue; (2) $603,816.64 on its claim for breach of the Megajackpots Agreements, plus prejudgment interest through September 21, 2007 of $257,598.07, plus additional daily interest that continues to accrue; (3) $161,796.79 on its claim for breach of Participation Agreements, plus prejudgment interest through July 16, 2007 of $31,771.37, plus additional prejudgment interest that continues to accrue; (4) $585,345.00 on its claim for breach of the Daily Royalty Agreements, plus prejudgment interest through July 16, 2007 of 244,519.69, plus additional daily interest that continues to accrue; (5) plus interest of $11,850.55 in prejudgment interest on its claim for breach of the EZ Pay Agreements (the principal amount owed on this agreement having already been paid) and (6) $56,426.69 on its claim for failure to pay the parts invoices, plus prejudgment interest through July 16, 2007 of $14,558.30, plus additional daily interest that continues to accrue.

Attorney's Fees and Costs. On June 11, 2008, the district court granted IGT's Motion for Attorneys' Fees and Costs, concluding IGT prevailed on all of its claims and "the Siena did not maintain this action in good faith." The district court awarded IGT $619,064.85 in fees, and $144,035.85 in costs, but denied a portion of the fees IGT sought because it had granted the Siena a partial new trial.

On December 14, 2009, the Nevada Supreme Court reversed the grant of a new trial. The Siena's Petition for Rehearing and Petition for Rehearing En Banc were both later denied. The Supreme Court issued its Remittitur on May 19, 2010. Just as IGT intended to submit to the district court a proposed amended judgment on directed verdict on remand (the "Amended Judgment"), which included an offset in the judgment amount to reflect that certain monies held on deposit by the Court were released to IGT, and to update certain other amounts, the Siena initiated these bankruptcy cases. Accordingly, the proposed Amended Judgment has not been submitted to the district court.

The Debtors were formed in connection with the acquisition and operation of the Siena. The Siena is a boutique hotel located at One South Lake Street, Reno, Nevada 89501. Wild Game, which has operated the Siena since its opening on July 31, 2001, is organized under Nevada law and is headquartered in Reno, Nevada. One South was formed for the purpose of owning and leasing the Siena, as well as the adjacent parking lot and an expansion property (collectively, the Property"). One South leases the Property to Wild Game, is organized under Nevada laws and is domiciled in Reno, Nevada. Hi-Five was created as an investment vehicle to allow interested investors to invest in the acquisition of the Siena and has a 25% membership interest in One South. *Id.* Hi-Five is organized under California law and serves as the only Debtor qualified to file its petition in this District under 28 U.S.C. § 1408(1).

Of Wild Game's 20 largest unsecured creditors, at least seven are listed with Nevada addresses, including tax debts owed to at least two Nevada governmental entities, one debt owed to a Nevada utility, and a judgment owed to IGT. One South and Hi-Five only list one creditor each in their respective list of 20 largest unsecured creditors on file with this Court. One South's only listed unsecured creditor is R.E. Reno, LLC, a limited liability company formed under the

laws of Nevada and managed by Walter Ng, an insider of the Debtors. Hi-Five lists only Barney Ng, another insider, among its list of unsecured creditors.

As a gaming establishment, the Siena is subject to heavy regulation from the Nevada Gaming Commission, which among other things according to the Debtors, precipitated the filing of the instant cases. Prior to the petition date, the Nevada Gaming Commission had issued an order which suspended Wild Game's gaming license, but also included language staying enforcement of the suspension for 30 days in order to allow the Debtors an opportunity to bring their delinquent tax payments current and to address other operational issues. When it became apparent to the Debtors that the Siena would not be able to meet its obligations imposed by the Gaming Commission, the Debtors filed their Chapter 11 petitions -- the day before the Gaming Commission was to follow up on the Debtors' compliance. *Id.* As a side note, it is not clear to IGT that the automatic stay operates to prevent action by the Gaming Commission in any event.

Reinstatement of Wild Game's gaming license is critical to the Debtors' ability to emerge from Chapter 11 as a recapitalized and profitable business. According to the Debtors, failure to comply with gaming regulations "would jeopardize the Debtors' gaming licenses, without which the Debtors' casino operations would cease entirely depriving the Debtors of any potential revenue generating opportunity from that aspect of their business." (Emergency Motion for Order Authorizing the Debtors to Honor Casino Chips and Gaming Liabilities, at 5, ECF Doc. # 6.)

Whether Wild Game's gaming license is ultimately preserved is a central issue to these cases and will be decided under Nevada law and upon the testimony of mostly Nevada witnesses. While there is no doubt that a bankruptcy court in California can interpret Nevada law matters involving gaming and other regulatory concerns, Nevada law will predominate. Therefore, a Nevada court more familiar with Nevada gaming law and with extensive experience in gaming cases will provide the most convenient and efficient administration of the cases.

## IV. RELIEF REQUESTED

By this Motion, IGT seeks entry of an order transferring venue to the Reno Bankruptcy Court. Bankruptcy Rule 1014(a) provides that the court "may transfer cases to any other district

4
MOTION FOR ENTRY OF ORDER TRANSFERRING VENUE TO THE DISTRICT OF NEVADA

if the court determines that the transfer is in the interest of justice or for the convenience of the parties." As discussed more fully below, under the appropriate legal standards, the interest of justice and the convenience of the parties dictate that the Court transfer the venue of the Debtors' cases to the Reno Bankruptcy Court.

## V. BASIS FOR RELIEF REQUESTED

### A. While Venue in California is Technically Proper Under 28 U.S.C. § 1408, The Cases Should Be Transferred to Nevada Pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a).

Venue in title 11 bankruptcy cases is proper in the district (1) in which the domicile, residence, principal place of business or principal assets of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement; or (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership. 28 U.S.C. § 1408. A corporation's domicile is generally held to be its state of incorporation. *See In re B.L. of Miami Inc.*, 294 B.R. 325, 328 (Bankr. D. Nev. 2003) (decision rendered by the Hon. Gregg W. Zive sitting in Reno). A corporation's principal place of business is typically found at its corporate headquarters, "provided that the headquarters is the actual center of direction, control, and coordination." *Hertz Corp. v. Friend et al.,* 559 U.S. ___, 130 S. Ct. 1181, 1192 (2010). Here, the Siena's headquarters are located in Reno, Nevada, and Reno is therefore the Debtors' principal place of business under Section 1408.

Under 28 U.S.C. § 1408(1), neither Wild Game nor One South could have filed their bankruptcy petitions in the Northern District of California. Both entities are Nevada limited liability companies doing business as the Siena Hotel Spa & Casino with their domicile, principal place of business, and their principal assets located in Nevada.

However, under section 1408(2), Wild Game and One South qualified to file their petitions in California, but only because their alleged affiliate, Hi-Five – a holding company organized under California law as an investment vehicle associated with the acquisition of the Siena – had filed bankruptcy in this District. Technically therefore, California is a proper venue

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,

for these cases, but "venue does not easily submit to hard and fast rules," and transfer of the cases to Nevada would promote the efficient administration of the estate, judicial economy, timeliness and fairness to all parties involved. *See In re B.L. of Miami, Inc.*, 294 B.R. at 329. Because the Debtors' business operations have only the most tenuous of connections to California, transfer to Nevada is appropriate.

**B. The Interest of Justice and the Convenience of the Parties Dictate that the Court Transfer the Bankruptcy Cases to the Nevada Bankruptcy Court.**

Notwithstanding the technical propriety of the debtor's venue choice, a court should transfer venue if it is in the "interest of justice" or "for the convenience of the parties" pursuant to 28 U.S.C. § 1412. Section 1412 is phrased in the disjunctive: thus the Court can transfer upon a showing that the transfer is "in interest of justice" *or* "convenience of parties." *See e.g.*, *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008). The Court may also transfer a case *sua sponte* under 11 U.S.C. § 105(a). *See Donald v. Curry (In re Donald)*, 328 B.R. 192, 198 (B.A.P. 9th Cir. 2005).

According to the Ninth Circuit Bankruptcy Appellate Panel, "The analysis of any combination of "interest of justice" and "convenience of parties" under § 1412 is inherently factual and necessarily entails the exercise of discretion based on the totality of the circumstances, which may include considerations regarding witnesses and the presentation of evidence." *In re Donald*, 328 B.R. at 204. The party seeking to transfer under section 1412 bears the burden of proof, which must be carried by a preponderance of the evidence. *See e.g.*, *Tig Ins. Co. v. Smolker*, 264 B.R. 661, 668 (Bankr. C.D. Cal. 2001). Because IGT meets its burden under both the "convenience of the parties" and the "interest of justice" statutory standards, transfer to the Reno Bankruptcy Court is warranted.

**1. The Court Should Transfer the Bankruptcy Cases to the Reno Bankruptcy Court for the Convenience of the Parties.**

In considering this prong of the venue transfer analysis, courts consistently look to the criteria established by the Fifth Circuit in *Puerto Rico v. Commonwealth Oil Ref. Co.* (*In re Commonwealth Oil Ref. Co.*), 596 F.2d 1239 (5th Cir.1979) *cert. denied*, 444 U.S. 1045, 100

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,

S.Ct. 732 (1980) ("*CORCO*").  The commonly cited *CORCO* factors usually add up to a "totality of circumstances" analysis, and are as follows: (1) the proximity of creditors of every kind to the court; (2) the proximity of the debtor to the court; (3) the proximity of witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if bankruptcy [liquidation] should result. *See In re Donald*, 328 B.R. at 204 (citing CORCO, 596 F.2d at 1247*); In re B.L. of Miami, Inc.*, 294 B.R. at 329.  Additionally, a number of courts have included as an additional factor, "a state's interest in having local controversies decided within its borders." *E.g., In re Newport Creamery*, 265 B.R. 614, 618 (Bankr. M.D. Fla. 2001).

Although much weight is given to the promotion of economic and efficient administration of the estate, *CORCO*, 596 F.2d at 1247, bankruptcy courts balance the due process concerns of assuring appropriate access to the court for all parties in interest against all other factors. *See In re Donald*, 328 B.R. at 204 (reasoning that "the integrity of the bankruptcy process requires that the natural enemies have reasonable access to the court"). When applying the *CORCO* factors, the underlying business of the debtor is a "major consideration" in determining which venue is better situated. *In re Dunmore Homes, Inc.*, 380 B.R. at 677.

For example, in the legally illustrative and factually analogous case *In re B.L. of Miami*, the Reno Bankruptcy Court transferred a Chapter 11 case from the District of Nevada to the Southern District of Florida. In that case, the debtor, a night club in Miami Beach, Florida, filed a Chapter 11 petition in its state of incorporation, Nevada. Applying the *CORCO* factors, the court ordered that transfer to Florida was warranted for both the convenience of the parties and in the interest of justice. 294 B.R. at 330-334.

The court found that the parties would be best served if the court hearing the case had an "active familiarity with the community and the milieu" in which the nightclub operated; finding such court "would be in a much better position to gauge the likelihood of an effective reorganization." *Id.* at 332 (quoting *In re Abacus Broad. Corp.,* 154 B.R. 682, 683 (Bankr. W.D. Tex. 1993)). The court reasoned that a Florida bankruptcy court was best situated to oversee the reorganization because the debtor's main asset, the night club, was located in Miami Beach and
7
MOTION FOR ENTRY OF ORDER TRANSFERRING VENUE TO THE DISTRICT OF NEVADA

the issues in controversy surrounding the night club would likely involve the interpretation and application of Florida statutes and case law. *Id.* at 332.

Directly on point, the Reno Bankruptcy Court explained its decision as follows: "Just as a Florida judge may well prefer to send a Nevada casino bankruptcy to Nevada even if venue were proper in Florida, this court sees strong reason to send a Chapter 11 case involving solely a Florida nightclub to Florida." *Id.* at 332. Thus, there is clearly Nevada bankruptcy authority for the proposition that transfer of the Debtors' instant Nevada casino bankruptcy to Nevada is appropriate, because "[i]n bankruptcy, more than in most other kinds of federal proceedings, judges tend to draw on their experience to test the promises and platitudes floated up to the bench." *Id*. (quoting *In re Abacus Broad. Corp.,* 154 B.R. at 683).

Here, the Debtors' Chapter 11 cases involve solely a Nevada hotel and casino and issues related to its operation, including regulation of its gaming license. The Debtors do not operate on a global or regional scale, and their assets are not spread across various jurisdictions. Given that the Debtors' sole connection to California is that it is insider-owned Hi-Five's state of organization, and that the Debtors' principal place of business, employees, creditors, and assets are in Nevada, the convenience of the parties requires a transfer of venue to the Reno Bankruptcy Court.

  **a)**   **The Proximity of Creditors to the Nevada Bankruptcy Court Favors Transfer to Nevada.**

Under the first *CORCO* factor, bankruptcy courts address which the proximity of the venue to most of the creditors, taking into account "both the number of creditors and the amounts of their claims." *In re B.L. of Miami, Inc*., 294 B.R. at 330. "Both number and size are of equal significance in gaining acceptance of a plan and should be of equal significance in considering the convience of the creditor." *CORCO*, 596 F.2d at 1248.

The Debtors have not filed their bankruptcy schedules and statement of financial affairs; thus a detailed and itemized list of liabilities is not currently available. However, from the Debtors' papers filed with this Court, as would be expected from a Nevada business, a significant number of the twenty largest unsecured creditors are located in Nevada. Many other

smaller trade creditors, not to mention all of Wild Game's employees, are no doubt located in Nevada and will find it difficult to be heard if venue remains in California.

One South and Hi-Five only list one creditor each in their respective list of 20 largest unsecured creditors on file with this Court. One South's only listed unsecured creditor is R.E. Reno, LLC, a limited liability company formed under the laws of Nevada and managed by Walter Ng, an insider creditor. Hi-Five lists only Barney Ng, also an insider creditor, among its list of unsecured creditors.

### b) The Proximity of the Debtors and Witnesses Necessary to the Administration of the Estate Favors Transfer to Nevada.

Under the second and third *CORCO* factors, courts analyze which venue is nearest to the debtor and to the witnesses necessary to the administration of the estate. Here, it is without question that Nevada is the preferable venue under these factors. The Debtors themselves are headquartered in Nevada. As stated above, Wild Game and One South are organized under Nevada law. Wild Game actually operates the Siena and has no business activity or presence outside of Nevada. Thus, a majority of the Debtors' key employees and professionals who may be called to testify in these cases or otherwise appear at hearings are likely based out of Reno, Nevada. Furthermore, professionals and employees located on site at the Siena are critical to effectuate reorganization.

While Hi-Five is organized under California law, it can hardly be said that it is, or "has become," the "nerve center" of the Debtors' operations as the Debtors unconvincingly declare. (Decl. of Barney Ng. p. 5 ¶ 13, ECF Doc. # 10.) The Debtors' principal place of business is Nevada because it is undisputed that their business activity, assets, and actual center of direction, control, and coordination are firmly rooted in Nevada. *In re B.L. of Miami, Inc.*, 294 B.R. at 333, 334 (ignoring debtor's contention that its "nerve center" was at the location of its principals when its actual business activity and trade creditors were elsewhere).

### c) The Location of the Debtors' Assets Heavily Favors Transfer to Reno.

The location of the Debtors' assets overwhelmingly favors transfer of administration of the cases to the Reno Bankruptcy Court. Bankruptcy courts, including courts in this Circuit,

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,

have routinely found that the favored forum is the district in which the primary assets are located. *See e.g., In re Donald*, 328 B.R. at 204 (transfer to Georgia was favored where debtor's property both real and personal were located in Georgia); *In re B.L. of Miami, Inc.*, 294 B.R. at 332; *In re Kona Joint Venture I, Ltd.*, 62 B.R. 169 (Bankr. D. Hawaii 1986) ("*In re Kona*"); *In re Dunmore Homes*, 380 B.R. at 677 (transferring case to California where debtor's real estate assets were mostly centralized in California); *In re Greenridge Apartments*, 13 B.R. 510, 513 (Bankr. D. Hawaii 1981) (court that shares jurisdiction with the primary assets would be better equipped to evaluate any appraisals and appraisers, as well as be in closer touch with the condition and operation of the property).

In the case of *In re Kona*, the Hawaii Bankruptcy Court addressed whether venue should remain in Hawaii where a debtor's primary asset was a hotel located in Hawaii. *See In re Kona*, 62 B.R. at 170-172. Despite the fact that the debtor's principal office, legal residence and domicile were located in Texas, the Hawaii Bankruptcy Court found that venue in Hawaii was favored and stated that "[i]t would defy good sense to administer in Texas the estate of a debtor whose primary asset is a hotel in Hawaii." *Id*.

Likewise, it would defy good sense to administer in California the estates of the Debtors whose primary asset is a hotel and casino in Nevada. *See id*.; *see also In re B.L. of Miami, Inc.*, 294 B.R. at 332 (finding that courts would likely be inclined to send a Nevada casino bankruptcy to Nevada despite proper venue in a foreign jurisdiction). All of the Debtors' substantial assets are located in Nevada, and they are subject to a comprehensive statutory system that controls the gaming industry within Nevada. *See Hotel Employees & Rest. Employees Int'l Union v. Nev. Gaming Comm'n*, 984 F.2d 1507, 1509 (9th Cir. 1992).

Accordingly, the Reno Bankruptcy Court would be in a better position to adjudicate the Debtors' cases because of its familiarity with Nevada gaming laws. *See In re Greenridge Apartments*, 13 B.R. at 513 (transferring venue where the primary asset, an apartment building, was located and being operated in Washington because that the bankruptcy court may be required to make rulings in accordance with the laws of Washington); *see also In re Kona*, 62 B.R. at 172. Because the location of the assets in these bankruptcy cases are centralized in

Nevada and the nature of the underlying business is specific to Nevada's regulatory and business climate, transfer to Nevada is warranted under this factor.

        d) **Venue in Nevada the Promotes Economic and Efficient Administration of the Cases.**

The economic and efficient administration of a debtor's estate is generally considered to be the most important factor in analyzing the convenience of parties. *See CORCO*, 596 F.2d at 1247. This factor weighs heavily in favor of transfer to the Reno Bankruptcy Court. In the case of *In re Dunmore Homes*, this factor was examined in detail. *See In re Dunmore Homes, Inc.*, 330 B.R. at 672-73. In choosing to transfer venue from New York to California, the court noted that "[a]nyone purchasing or financing the business in all likelihood is going to have to conduct most of the necessary due diligence in California" and that the "[d]ebtor's only offices, management and employees are located in California." *Id*. The court emphasized the economic benefit of having bankruptcy venue in the state where the debtor's real property was located, stating that "[t]he majority of the Debtor's significant assets consist of real property in residential developments in the state of California." *Id*. at 673.

   Likewise, in the case of *In re Macatawa Hospitality, Inc.*, the Eastern District of Michigan was requested to transfer venue to the Western District of Michigan, where the debtor's "hotel, restaurant and adjoining facilities" were located. 158 B.R. 82, 84 (E.D. Mich. 1993). In considering economic administration, the court gave great weight to the location of the primary real estate asset and transferred the case to the Western District of Michigan. *Id*. at 88.

All of the considerations in the cases referred to above are salient here. The Debtors, their assets, business operations, and a majority of their creditors are located in Nevada. Additionally, the Debtors are subject to intense scrutiny under Nevada's gaming laws. Clearly, the Debtors' bankruptcy cases can be administered more economically in Nevada than from California.

        e) **Local Considerations Warrant Transfer to Nevada.**

Another consideration under *CORCO*'s economic and efficient administration factor is whether the Debtors' cases are of such local concern that they should proceed in Nevada. *See In*

*re Enron Corp.*, 284 B.R. 376, 399 (Bankr. S.D.N.Y. 2002). In deciding whether transfer is appropriate, a number of courts have considered "a state's interest in having local controversies decided within its borders." *In re Newport Creamery*, 265 B.R. at 618. Courts have recognized that local concern may be a relevant consideration where the debtor has been the subject of regulatory action within the venue that transfer is sought. *See In re Enron Corp.* 284 B.R. at 398-399 (noting that whether a governmental agency that regulates the debtor joins a motion to transfer is "highly probative" of whether case should be transferred).

Here, it is undisputed that the Debtors have been and are currently the subject of regulatory and enforcement action from the State of Nevada for failure to meet their minimum bankroll requirements imposed by the Gaming Commission. In fact, through the office of the Nevada Attorney General, both the Nevada Gaming Control Board and the Nevada Gaming Commission have formally indicated to undersigned counsel their intent to file their own joinders in this request for transfer of venue of these cases to the Reno Bankruptcy Court. Accordingly, the factor that local concern supports transfer as a matter of economic and efficient administration is easily met and warrants transfer to Nevada.

### f) Necessity for Ancillary Administration

The sixth and final *CORCO* factor has "little weight because anticipating the failure of this Chapter 11 case is not a logical basis in weighing venue." *In re B.L. of Miami*, 294 B.R. at 333 (citing *CORCO*, 596 F.2d at 1248). Notwithstanding the weight that courts generally attribute to this factor, it should be a Nevada court that ultimately decides *whether* conversion to chapter 7 is warranted in this case. The Reno Bankruptcy Court is in the best position to decide if that result is inevitable or appropriate.

Should these Debtors ultimately be liquidated, the ancillary administration would be in Nevada because that is where the Debtors' assets are located. *See In re Greenridge Apartments*, 13 B.R. at 513 (finding that "Washington would be the preferred jurisdiction [because if bankruptcy should result] liquidation would be required of the debtor's assets which are located solely in Washington"). The marketing and selling of the Debtors' Nevada assets would best be overseen by a Nevada bankruptcy court with greater familiarity with the market and regulatory

regime unique to the Debtors' assets. *Cf. id.*; *cf. also In re Dunmore Homes, Inc.*, 330 B.R. at 677 (transferring venue from New York to California where debtor's real property was located in California and already being liquidated).

### 2. The Court Should Transfer the Bankruptcy Cases to the Reno Bankruptcy Court in the Interest of Justice.

Not only should the bankruptcy cases be transferred to Nevada for the "convenience of the parties," but the bankruptcy cases should also be transferred "in the interest of justice." 28 U.S.C. § 1412. When considering the interest of justice test, "the court applies a broad and flexible standard," taking into consideration whether transfer of venue "will promote the efficient administration of the estate, judicial economy, timeliness and fairness." *In re B.L. of Miami*, 294 B.R. at 334 (citing *In re Enron*, 284 B.R. at 403).

Under the heading of "in the interest of justice," courts have considered, in addition to the location of the pending bankruptcy: (1) whether the transfer would promote the economic and efficient administration of the bankruptcy estate; (2) whether the interests of judicial economy would be served by the transfer; (3) whether the parties would be able to receive a fair trial in each of the possible venues; (4) whether either forum has an interest in having the controversy decided within its borders; (5) whether the enforceability of any judgment obtained would be affected by the transfer; and (6) whether the plaintiff's original choice of forum should be disturbed. *See In re Dunmore Homes, Inc.*, 380 B.R. at 672; *TIG Insurance Co.*, 264 B.R. at 668.

As noted by bankruptcy courts, "generally what serves the convenience of the parties will also serve the interest of justice." *In re B.L. of Miami*, 294 B.R. at 334 (quoting *In re Enron*, 284 B.R. at 386). In addition to each of the convenience factors that militate in favor of transfer, Nevada's interest in these cases and the likelihood that transfer will yield greater participation by parties in interest lend additional support to Nevada as the favored venue. This is further evidenced by the fact that a significant number of those parties have indicated their intent to file joinders in this Motion (in addition to the Nevada gaming authorities).

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,

### a) Nevada Has a Strong Interest in Having These Bankruptcy Cases Adjudicated Within its Borders.

In deciding whether the "interest of justice" test is met, courts ask whether either forum (the current or prospective) has an interest in seeing the bankruptcy adjudicated in its forum. *See e.g., Enron Crop. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 639 (Bankr. S.D.N.Y. 2004). As set forth above, California's ties to the Debtors are tenuous, at best. On the other hand, as set forth above, Nevada has a unique and substantial interest in the oversight of the gaming industry, which it heavily regulates. *See e.g., Hotel Employees & Rest. Employees Int'l Union*, 984 F.2d at 1509 ("The State of Nevada has a comprehensive statutory system to control the gaming industry in the state."); *In re National Consumer Mortg. LLC.*, 2010 WL 2384217 (C.D. Cal. 2010) (granting Nevada casino's motion to transfer venue from Central District of California to the District of Nevada where adversary proceeding involved Nevada gaming law and documents and witnesses were located in Nevada).

### b) Retention of the Case in California Would Reduce Participation and Frustrate Justice.

In this case, as in *B.L. of Miami*, retaining jurisdiction in Oakland, California "would make it difficult and expensive for interested parties to participate in the case. Creditors would be geographically distant and if they wanted to participate would need to retain local counsel." *In re B.L. of Miami*, 294 B.R. at 334. Here, that would require paying the higher market rates charged by San Francisco attorneys. "There is little doubt that distance and cost would unfairly reduce participation in the reorganization process, and that participation is a fundamental predicate of Chapter 11." *Id.* (citing 11 U.S.C. § 1109(b)).

The Debtors' creditors are the beneficiaries of the estates. Many of the 20 largest creditors are in Nevada, and it is only logical to assume that an even greater number of the smaller creditors are as well, including the employees. They should not have to shoulder the expense and inconvenience of retaining California counsel and/or traveling to Oakland to attend hearings to participate in these cases. Merely monitoring the hearings in the cases by telephone is not satisfactory. Further, the economic interests of these creditors should not be taxed by the

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,

estates bearing the unnecessary expense of transporting the Debtors' key employees and witnesses back and forth from Nevada to California for every hearing.

## VI.  CONCLUSION

Simply put, these cases do not belong in California. The facts acknowledged by the Debtors in their own filings set forth a classic factual setting for the transfer of venue of these bankruptcy cases to Nevada. The success of the Debtors' reorganization hinges on their ability to successfully and continuously operate the Siena, as well as their ability to achieve compliance with Nevada gaming statues and regulations. The District of Nevada is the center of the Debtors' operations, and the Reno Bankruptcy Court is the most convenient forum for most of the parties in interest, including many of the largest creditors and IGT, as well as Debtors' key on site personnel. Pursuant to 28 U.S.C. § 1412 and interpretative authority, the interest of justice and the convenience of parties is best served by a transfer to the Reno Bankruptcy Court because the Debtors' nexus to Oakland is tenuous, at best. Accordingly, IGT respectfully requests that this Court transfer venue to the Reno Bankruptcy Court.

Respectfully submitted this 5th day of August, 2010.

LIONEL SAWYER & COLLINS

By: /s/ *Jennifer A. Smith*
     Jennifer A. Smith

SCHNADER HARRISON SEGAL & LEWIS LLP

By: /s/ *Melissa S. Lor*
     Melissa S. Lor
     George H. Kalikman

Attorneys for International Game Technology

15
MOTION FOR ENTRY OF ORDER TRANSFERRING VENUE TO THE DISTRICT OF NEVADA
Case: 10-48268   Doc# 41   Filed: 08/05/10   Entered: 08/05/10 10:05:53   Page 19 of 19