Aram Ordubegian (SBN 185142)
Andy S. Kong (SBN 243933)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
Email: ordubegian.aram@arentfox.com
kong.andy@arentfox.com

*Proposed* General Bankruptcy and Restructuring
Attorneys for Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| In re: | Case No. 4:10-bk-48268-RJN |
| **HI-FIVE ENTERPRISES, LLC**, a California limited liability company; **ONE SOUTH LAKE STREET, LLC**, a Nevada limited liability company; and **WILD GAME NG, LLC**, a Nevada limited liability company d/b/a The Siena Hotel Spa & Casino, | [Jointly Administered with Case Nos. 4:10-bk-48272-RJN and 4:10-bk-48270-RJN]<br><br>Chapter 11 |
| Debtors. | **NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING DEBTORS AND DEBTORS-IN-POSSESSION TO EMPLOY CERTAIN PROFESSIONALS IN THE ORDINARY COURSE OF BUSINESS AND TO SET PROCEDURES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BARNEY NG IN SUPPORT THEREOF** |
| [X] Affects all Debtors | |
| [ ] Applies only to Hi-Five Enterprises, LLC | **Hearing** |
| [ ] Applies only to One South Lake Street, LLC | DATE: September 29, 2010 |
| [ ] Applies only to Wild Game Ng, LLC | TIME: 11:30 a.m. |
| | PLACE: 1300 Clay Street, Courtroom 220<br>Oakland, CA 94612 |

Case 10-48268 Doc# 98 Filed: 09/08/10 Entered: 09/08/10 15:53:50 Page 1 of 23

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | STATEMENT OF RELEVANT FACTS | 4 |
| II. | ARGUMENT | 6 |
|  | A. Continued Retention and Compensation of the Ordinary Course Professionals Should Not Require Court Approval Under 11 U.S.C. §§ 363(c)(1) and 1108 | 6 |
|  | B. Employment of the Ordinary Course Professionals Does Not Require Court Approval Because They Are Not Professional Persons within the Meaning of 11 U.S.C. § 327 | 9 |
| III. | CONCLUSION | 12 |

Case: 10-48268    Doc# 98    Filed: 09/08/10    Entered: 09/08/10 15:53:50    Page 2 of 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bennett v. Williams,*
892 F.2d 822 (9th Cir. 1989) .................................................................................. 6

*Burlington Northern R.R. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),*
853 F.2d 700 (9th Cir. 1988) ............................................................................... 7, 8

*Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
60 B.R. 612 (Bankr. S.D.N.Y.), *rev'd on other grounds,* 801 F.2d 60 (2d Cir. 1986) .... passim

*In re Carolina Sales Corp.,*
45 B.R. 750 (Bankr. E.D.N.C. 1985) .................................................................... 11

*In re Century Investment Fund VII Ltd. Partnership,*
96 B.R. 884 (Bankr.E.D.Wis. 1989) ...................................................................... 11

*In re Columbia Motor Express, Inc.,*
33 B.R. 389 (M.D. Tenn. 1983) .............................................................................. 6

*In re Curlew Valley Assocs.,*
14 B.R. 506 (Bankr. D. Utah 1981) ......................................................................... 6

*In re D'Lites of America, Inc.,*
108 B.R. 352 (Bankr. N.D. Ga. 1989) ............................................................. 8, 9, 10

*In re Economy Milling Co.,*
37 B.R. 914 (D.S.C. 1983) ...................................................................................... 8

*In re James A. Phillips, Inc.,*
29 B.R. 391 (S.D.N.Y. 1983) ................................................................................... 7

*In re La Sherene, Inc.,*
3 B.R. 169 (Bankr. N.D. Ga. 1980) ......................................................................... 6

*In re Leslie Oil & Gas Co.,*
98 B.R. 774 (Bankr. S.D. Ohio 1989) .............................................................. 9, 10

*In re Neidig Corp.,*
117 B.R. 625 (Bankr.D.Colo. 1990) ...................................................................... 10

*In re Pacific Forest Indus.,*
95 B.R. ................................................................................................................ 10

*In re Rusty Jones, Inc.,*
109 B.R. 838 (Bankr. N.D. Ill. 1989) .................................................................. 6, 7

*In re Seatrain Lines, Inc.,*
13 B.R. 980 (Bankr. S.D.N.Y. 1981) ................................................................. 9, 10

*In re Waterfront Cos., Inc.,*
56 B.R. 31 (Bankr. D. Minn. 1985) .................................................................... 7, 8

Case: 10-48268     Doc# 98     Filed: 09/08/10     Entered: 09/08/10 15:53:50     Page 3 of 23
LA/314797.1

## STATUTES

11 U.S.C. 327(a) ............................................................................................ 4, 12

11 U.S.C. §§ ....................................................................................................... 11

11 U.S.C. § 327 ............................................................................................ passim

11 U.S.C. § 327(a) ....................................................................................... 4, 10

11 U.S.C. § 331 ................................................................................................. 11

11 U.S.C. § 363 ................................................................................................... 6

11 U.S.C. § 363(c)(1) ......................................................................................... 6

11 U.S.C. § 547(c)(2) ......................................................................................... 8

11 U.S.C. § 1107 ................................................................................................. 6

11 U.S.C. § 1108 ................................................................................................. 6

## OTHER AUTHORITIES

H.R. Rep. No. 595, 95th Cong., 1st Sess. 404 (1977) ....................................... 6

S. Rep. No. 989, 95th Cong., 2d Sess. 116 (1978) ............................................ 6

Case 10-48268   Doc# 98   Filed: 09/08/10   Entered: 09/08/10 15:53:50   Page 4 of 23

1     **TO: THE HONORABLE RANDALL J. NEWSOME; THE OFFICE OF THE U.S.**

2 **TRUSTEE; AND ALL PARTIES ENTITLED TO NOTICE:**

3     **PLEASE TAKE NOTICE** that on September 29, 2010, at 11:30 a.m., a hearing will be

4 held before the Honorable Randall J. Newsome, United States Bankruptcy Judge, at Courtroom

5 220, 1300 Clay Street, Oakland, California 94612, on this *Motion for Order Authorizing Debtors*

6 *and Debtors-in-Possession to Employ Certain Professionals in the Ordinary Course of Business*

7 *and to Set Procedures* (the "Motion") filed by Hi-Five Enterprises, LLC and its affiliated debtors

8 and debtors-in-possession in these jointly administered chapter 11 cases.[1]

9     **PLEASE TAKE FURTHER NOTICE** that the Motion asks the Court to authorize the

10 Debtors to employ and compensate certain professionals in the ordinary course of Debtors'

11 business under 11 U.S.C. §§ 363(c)(1) and 1108. Specifically, Debtors are seeking authority to

12 continue their relationships with certain ordinary course professionals who provide human

13 resource, gaming compliance and general legal services to the Debtors prior to July 21, 2010 (the

14 "Petition Date"), without requiring Debtors to seek any other or further order or approval of the

15 Court. The professionals that Debtors are initially seeking to employ in the ordinary course

16 consist of: (1) the law firm of Kelly Law Group, LLP; (2) the gaming compliance and regulation

17 firm of KMC, Inc. ("KMC"); (3) the staffing firm of Elever Professional; and (4) the hospitality

18 management firm of Onsite Consulting (collectively, the "Ordinary Course Professionals").

19     **PLEASE TAKE FURTHER NOTICE** that, if Debtors wish to employ any ordinary

20 course professional in addition to or other than the foregoing Ordinary Course Professionals,

21 Debtors will serve all parties entitled to notice with a notice setting forth the name of the

22 proposed ordinary course professional, the nature and scope of the services that such professional

23 is intended to render to Debtors, and the estimated compensation to be paid to such proposed

24 ordinary course professional. If a written objection to the proposed retention is not filed and

25 served within 10 days after the mailing of the notice, Debtors will be entitled to proceed with the

26

27

28

---

[1]  Hi-Five's debtor affiliates are One South Lake Street, LLC, a Nevada limited liability company ("One South") and Wild Game NG, LLC, a Nevada limited liability company ("Wild Game"). Hi-Five, One South and Wild Game are collectively referred to as the "Debtors".

Case 10-48268   13/314/09.1   Doc# 98   Filed: 09/08/10   Entered: 09/08/10 15:53:50   Page 5 of 23

retention and to compensate the ordinary course professional in the ordinary course of business, at the expense of Debtors' estates and without the need for any other or further order of the Court. If a timely and properly served objection is made to the proposed retention, and Debtors and such objecting party cannot promptly resolve the objection, a hearing to resolve the dispute will be held before the Court s soon as practicable subject to the availability of the Court.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in greater detail in the annexed Memorandum of Points and Authorities, there are good and sufficient grounds to approve the Motion. Debtors believe that the relief requested in the Motion is in the best interests of Debtors' estates and its creditors and that there are good and sufficient grounds to grant the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Bankruptcy Local Rule 9014-1, any response or opposition to the Motion must be in writing and must be filed with the Court and served upon the undersigned counsel at least 7 days before the hearing date. The failure to timely file and serve a written opposition may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

**WHEREFORE**, based upon this Motion, the annexed Memorandum of Points and Authorities, the annexed Declaration of Barney Ng in Support of the Motion (the "Ng Declaration"), and the record in these cases, Debtors hereby move this Court for the entry of an order:

1. authorizing Debtors, under 11 U.S.C. §§ 363(c)(1) and 1108, to employ and compensate the Ordinary Course Professionals in the ordinary course of Debtors' business without the need to seek any other or further order or approval of the Court with respect to the compensation of such Ordinary Course Professionals;

2. authorizing Debtors to employ ordinary course professionals other than the above Ordinary Course Professionals, if necessary and appropriate, after complying with the procedures set forth above regarding notice and adjudication of timely filed and served objections, if any; and

/ / /

/ / /

/ / /

Case 10-48268    Doc# 98    Filed: 09/08/10    Entered: 09/08/10 15:53:50    Page 6 of 23

1    3.    granting Debtors such other and further relief as is necessary and appropriate.

Dated:    September 8, 2010                    **ARENT FOX LLP**


                                               By: /s/ *Andy S. Kong*
                                                   Aram Ordubegian
                                                   Andy S. Kong
                                                   *Proposed* Attorneys for the
                                                   Debtors and Debtors in Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF RELEVANT FACTS

Before commencing these cases, Debtors employed certain professionals in the ordinary course of the Debtors' businesses (the "Ordinary Course Professionals") to assist it with various non-bankruptcy matters such as ensuring compliance with Nevada gaming regulations, hotel management, human resource functions and general legal services. Debtors believe that – given the limited nature of the services provided by the Ordinary Course Professionals, the minimal effect of their services upon the administration of the Debtors' estates, and their ancillary role in the Debtors' reorganization – the Ordinary Course Professionals are not professional persons within the meaning of 11 U.S.C. § 327(a). Additionally, the Ordinary Course Professionals have historically been employed in the ordinary course of the Debtors' business. As a practical matter, it is unduly burdensome and of little benefit to the estates to require the Ordinary Course Professionals to be subject to employment and compensation procedures generally applicable to bankruptcy professionals employed by the Debtors.

Debtors hereby seek to employ (1) the law firm of Kelly Law Group, LLP; (2) the gaming compliance and regulation firm of KMC, Inc. ("KMC"); (3) the staffing firm of Elever Professional; and (4) the hospitality management firm of Onsite Consulting as Ordinary Course Professionals to continue to assist it with certain non-bankruptcy matters. The Ordinary Course Professionals will not represent the Debtors in the conduct of its bankruptcy cases or the administration of its estates.

Alternatively, if the Court believes some or all of the Ordinary Course Professionals are professional persons under 11 U.S.C. 327(a) or (e), the Debtors respectfully request that the Court authorize their employment under 11 U.S.C. 327(a) or (e). Naturally, if the Court so requests, the Debtors will separately prepare and file employment applications for those Ordinary Course Professionals.

/ / /

/ / /

### Kelly Law Group, LLP

Debtors require periodic general legal assistance typically rendered by a general or in-house counsel. Since December 2009, Debtors have retained Kelly Law Group, LLP to render general legal advice and to act as "in-house" general counsel, including addressing issues concerning the administration of the Debtors' hotel, spa and casino, drafting employment agreements, and various other commercial agreements, advising on business transactions, appearing on behalf of the Debtors before the Nevada Gaming Commission, and coordinating and overseeing the Debtors' litigation conducted by other outside counsel. Debtors, on average, have paid Kelly Law Group, LLP $4,000 per month for its legal services and estimates that the compensation to be paid to Kelly Law Group, LLP during the pendency of the Debtors' bankruptcy cases will not exceed $40,000. For purposes of full disclosure, Matthew Kelly of the Kelly Law Group, LLP is the son-in-law of the Debtors' managing member.

### KMC

Since January 2010, KMC has provided gaming compliance services to the Debtors to ensure that the Debtors are complying with all required Nevada gaming regulations. Debtors, on average, have paid KMC $8,000 per month for its services and estimates that the compensation to be paid to KMC during the pendency of the Debtors' bankruptcy cases will not exceed $80,000.

### Elever Professional

Since July 2010, Elever Professional has provided human resource services to the Debtors to implement human resource policies, hiring and firing employees, and overall managing the administrative functions. Debtors, on average, have paid Elever Professional $10,000 per month for its services and estimates that the compensation to be paid to Elever Professional during the pendency of the Debtors' bankruptcy cases will not exceed $100,000.

### Onsite Consulting

Since December 2009, Onsite Consulting has provided hotel management and consulting services to the Debtors to make and implement significant operational changes to the Debtors' customer marketing program and third party hotel booking systems (i.e., Expedia, etc.) and in general, increase the Debtors' revenue. Debtors, on average, have paid Onsite Consulting

$60,000 per month for its services and estimates that the compensation to be paid to Onsite Consulting during the pendency of the Debtors' bankruptcy cases will not exceed $300,000.

## II.

## ARGUMENT

**A.** **Continued Retention and Compensation of the Ordinary Course Professionals Should Not Require Court Approval Under 11 U.S.C. §§ 363(c)(1) and 1108.**

Under 11 U.S.C. §§ 1107 and 1108, a debtor-in-possession has the right to continue operating its business without the Bankruptcy Court's prior approval. To encourage the continued operation of a business in chapter 11, courts have attached a presumption of reasonableness to a debtor's management decisions. *See Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615 (Bankr. S.D.N.Y.), *rev'd on other grounds*, 801 F.2d 60 (2d Cir. 1986) (*citing In re Columbia Motor Express, Inc.*, 33 B.R. 389, 393 (M.D. Tenn. 1983) *and In re La Sherene, Inc.*, 3 B.R. 169, 174 (Bankr. N.D. Ga. 1980) (presumption arises from belief that debtor and current management are best suited to orchestrate debtor's rehabilitation). This presumption reflects Congress's policy of removing the bankruptcy courts from the daily administration of the bankruptcy estate. *See H.R. Rep. No. 595, 95th Cong., 1st Sess. 404 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 116 (1978). Indeed, a debtor's business decisions will only warrant judicial intervention when they are not reasonable, made in bad faith, or exceed the scope of the debtor's authority under the Bankruptcy Code. *See In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *cf. Bennett v. Williams*, 892 F.2d 822, 824 (9th Cir. 1989) (giving deference to trustee's business management decisions).

Under 11 U.S.C. § 363(c)(1), a debtor has the right to enter into transactions and to use the estate's property without notice or a hearing as long as the subject transaction or use of property is made in the ordinary course of business. Courts have used 11 U.S.C. § 363, in conjunction with 11 U.S.C. §§ 1107 and 1108, to allow a debtor to make employment decisions without the intervention of the court, including the decision to hire outside professionals. *See In re Rusty Jones, Inc.*, 109 B.R. 838, 841 (Bankr. N.D. Ill. 1989); *Johns-Manville*, 60 B.R. at 615-19.

LA/31479V.1

Case: 10-48268   Doc# 98   Filed: 09/08/10   Entered: 09/08/10 15:53:50   Page 10 of 23

1   Courts have allowed a debtor to make such employment decisions without notice or a hearing
2   when the employment occurs in the ordinary course of business. *See e.g. Johns-Manville*, 60
3   B.R. at 619. "Persons who are not charged with administering the estate, but who assist the
4   debtor in other capacities may not have to be employed under 11 U.S.C. § 327." *Rusty Jones,*
5   *Inc.,* 109 B.R. at 841. For example, in *Johns-Manville*, the court found that the debtor's
6   employment of two professional lobbyists was permissible without notice and a hearing because
7   this activity was undertaken in the ordinary course of the debtor's business. *Id.* Thus, if Debtors'
8   employment of the proposed Ordinary Course Professionals here is undertaken in the ordinary
9   course of Debtors' business, then Debtors need not seek any other or further orders of the Court
10  in continuing to retain or compensate such Ordinary Course Professionals; regardless, out of an
11  abundance of caution, the Debtors seek this Court's guidance.

12          To determine whether an activity falls within the ordinary course of business and therefore
13  does not require court approval, courts rely on two tests: (1) the vertical dimension test,
14  previously known as the creditor's expectation test, and (2) the horizontal dimension test, also
15  called the industry-wide test. *Burlington Northern R.R. v. Dant & Russell, Inc. (In re Dant &*
16  *Russell, Inc.),* 853 F.2d 700, 704 (9th Cir. 1988); *Johns-Manville*, 60 B.R. at 616. The
17  employment of the proposed Ordinary Course Professionals satisfies both of these tests.

18          The vertical dimension or creditor's expectation test analyzes a debtor's activities "from
19  the vantage point of a hypothetical creditor and inquires whether the transaction subjects a
20  creditor to economic risks of a nature different from those he accepted when he decided to extend
21  credit [to the subject debtor]." *Johns-Manville,* 60 B.R. at 616; *see In re Waterfront Cos., Inc.*, 56
22  B.R. 31, 35 (Bankr. D. Minn. 1985); *In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y.
23  1983). The primary focus of this test is on "the debtor's internal operations and workings [while
24  t]he 'ordinariness' of actions taken by a debtor depends upon the nature, type and size of its
25  business." *Johns-Manville,* 60 B.R. at 617. Specifically, under this test, a debtor's proposed
26  activity is compared to its pre-petition activities and business practices. *Id.*

27          In this case, in light of the nature of Debtors' business, which is operating a hotel, spa and
28  casino, Debtors' creditors should, and doubtlessly do, reasonably assume (and in some cases

Case: 10-48268    Doc# 98    Filed: 09/08/10    Entered: 09/08/10 15:53:50    Page 11 of
23
LA/314797.1

1    know) that Debtors regularly do employ and have employed professionals to handle gaming

2    compliance issues, human resource management, and hotel management and consulting services

3    that arise in the ordinary course of business and that it regularly requires general legal services in

4    connection with these issues. The scope of Debtors' daily operations creates a need for the type

5    of routine services for which the Ordinary Course Professionals were retained pre-petition and

6    which may necessarily continue post-petition.

7         By conforming to its creditors' expectations given its business and thereby satisfying the

8    vertical dimension test, Debtors' decision to employ and retain the Ordinary Course Professionals

9    falls within the ordinary course of Debtors' business and obviates the need for Court approval of

10   the continued employment and compensation of such Ordinary Course Professionals.

11         Similarly, under the more objective, but parallel analysis required by the horizontal

12   dimension test, or industry-wide test, Debtors respectfully assert that the Court should find that

13   retention and compensation of the Ordinary Course Professionals does not warrant approval

14   pursuant to 11 U.S.C. § 327. Specifically, the horizontal dimension test asks whether an activity

15   falls within a debtor's ordinary course of business by analyzing "whether the postpetition

16   transaction is of a type that other similar businesses would engage in as ordinary business." *Dant*

17   *& Russell*, 853 F.2d at 704; *Waterfront*, 56 B.R. at 34-35. The primary focus of this test would be

18   on Debtors' business "vis-à-vis similar businesses." *John-Manville*, 60 B.R. at 618. The

19   requisite showing, as articulated by the courts adopting this test, is minimal: "[s]ince this showing

20   is required merely to assure that neither the debtor nor the creditor do anything abnormal to gain

21   an advantage over other creditors, an extensive showing that such transactions occurred often, or

22   even regularly, is not necessary . . . [t]he transaction need not have been common; it need only be

23   ordinary." *In re Economy Milling Co.*, 37 B.R. 914, 922 (D.S.C. 1983) (interpreting the use of

24   the term "ordinary course of business" in 11 U.S.C. § 547(c)(2)); *see also In re D'Lites of*

25   *America, Inc.*, 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989). Specifically, "[a] transaction can be

26   ordinary and still occur only occasionally." *Id.*

27         A company such as Debtors would and should rationally and responsibly retain the

28   services of an outside human resource firm, gaming compliance firm and hotel management firm

Case: 10-48268   Doc# 98   Filed: 09/08/10   Entered: 09/08/10 15:53:50   Page 12 of 23

1 to perform the numerous administrative and operational functions required of a hotel, spa and

2 casino. Moreover, a business such as the Debtors is doubtlessly going to require the employment

3 of "in-house" general counsel in connection with its business that arise in the ordinary course of

4 business.

5      Therefore, under both the vertical and horizontal dimension tests for determining whether

6 an activity or transaction falls within the ordinary course exception so as to allow a debtor to

7 undertake such activity without order or other intervention of the Court, Debtors respectfully

8 assert that the continued employment and compensation of the proposed Ordinary Course

9 Professionals was part of the ordinary course of Debtors' business pre-petition, and should

10 continue as such during these bankruptcy cases.

11 **B.**    **Employment of the Ordinary Course Professionals Does Not Require Court**

12       **Approval Because They Are Not Professional Persons within the Meaning of**

13       **11 U.S.C. § 327.**

14      The most widely accepted definition of "professional person," which is now well

15 established in the case law, is that set forth in *Seatran Lines, Inc.*.

16         For the purposes of section 327(a), 'professional person' is limited
17         to persons in those occupations which play a central role in the
        administration of the debtor proceeding . . . Court approval is
        required for the retention of attorneys, accountants, appraisers,
18         auctioneers and persons in other professions *intimately involved* in
        the administration of the debtor's estate."[2]
19

20      In applying this definition, courts have found that the Bankruptcy Code "created a

21 distinction between those persons who were merely involved in the mechanics of the debtor's

22 business operations... and those persons whose employment actually affected the administration

23 of the debtor's reorganization." *Johns-Manville*, 60 B.R. at 620; *In re D'Lites of Am., Inc.*, 108

24 B.R. 352, 355 (Bankr. N.D. Ga. 1989) ("a 'professional person' is one who takes a central role in

25 the administration of the bankruptcy estate and in the bankruptcy proceedings, as opposed to one

26 who provides services to the debtor that are necessary whether the petition was filed or not."); *In*

27 *re Leslie Oil & Gas Co.*, 98 B.R. 774, 775 (Bankr. S.D. Ohio 1989) ("A professional person is

28

---

[2] *In re Seatran Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981) (emphasis added).

Case: 10-48268   Doc# 98   Filed: 09/08/10   Entered: 09/08/10 15:53:50   Page 13 of 23

one who plays a central role in the administration of a bankruptcy debtor's affairs and is intimately involved in the administration of the debtor's bankruptcy estate."). Therefore, the employment of persons not charged with administering the estate does not require court approval under section 327 even though their personal employment apart from what they do for the debtor may be considered "professional." *In re Pacific Forest Indus.*, 95 B.R. at 743 ("It is only those who deal with the actual reorganization of the debtor (rather than the ongoing business of the debtor) who are required to be employed under § 327 and whose applications for payment must be approved by the Court.").

The fundamental lesson of *Seatrain*, which has been adopted by numerous courts, is that conventional nomenclature does not dictate whether an individual is or is not a professional person for purposes of the Bankruptcy Code. As a general matter, education, specialized expertise, academic degrees, or government licenses may vest an individual with the title of "professional." For purposes of the Bankruptcy Code, however, one's occupation is not determinative: "[T]he phrase "professional person," as used in § 327(a), is a term of art reserved for those persons who play an intimate role in the reorganization of the debtor's estate." *Johns-Manville*, 60 B.R. at 619 (concluding that lobbyists are not professionals as they "were not hired to represent or assist Manville in carrying out its duties under title 11... [,] did not play any part in negotiating a plan, adjusting the debtor/creditor relationship, or disposing of or acquiring assets; ... [and did not] perform any other duties of a debtor under the Bankruptcy Code."); *see also In re Pacific Forest Indus., Inc.*, 95 B.R. 740, 743 (Bankr.C.D.Cal. 1989) (only those who deal with the actual reorganization of a debtor, rather than the ongoing business of a debtor, are required to be employed with approval of the Court); *In re Neidig Corp.*, 117 B.R. 625, 628-29 (Bankr.D.Colo. 1990) (professional person is one who plays a central role in administration of the debtor's estate); *D'Lites of America*, 108 B.R. at 355 (professional person "is one who takes a central role in the administration of the bankruptcy estate and in the bankruptcy proceedings, as opposed to one who provides services to the debtor that are necessary whether the petition was filed or not"); *In re Leslie Oil and Gas Co.*, 98 B.R. 774, 775 (Bankr.S.D.Ohio 1989) ("It is not the usual onlooker's perception that a person's occupation is the 'profession' which governs, but rather the

Case: 10-48268 Doc# 98 Filed: 09/08/10 Entered: 09/08/10 15:53:50 Page 14 of 23

1    substance of the person's role in a debtor's operation."); *In re Century Investment Fund VII Ltd.*
2    *Partnership*, 96 B.R. 884 (Bankr.E.D.Wis. 1989). The qualitative involvement with the chapter
3    11 case must be substantial if it is to elevate an individual into the class of professional persons
4    for purposes of 11 U.S.C. § 327.

5    　　　The employment of the Ordinary Course Professionals here has taken place independently
6    of Debtors' chapter 11 cases and has little effect on, and is not necessarily affected by, Debtors'
7    chapter 11 filings. For the sake of brevity, the Debtors will not reiterate the duties of each of the
8    Ordinary Course Professionals which are provided *supra*, but submit that their duties are not
9    related to the administration of Debtors' estates, its reorganization efforts, or its ability to emerge
10   from bankruptcy, thereby removing the proposed Ordinary Course Professionals from the
11   purview of 11 U.S.C. § 327. Thus, and under these circumstances, the mere fact that the Ordinary
12   Course Professionals may commonly be referred to as "professionals" should not trigger the
13   panoply of procedural requirements that professional persons under 11 U.S.C. § 327 must meet in
14   order to be employed and compensated by the Debtors' estates. Moreover, there are good reasons
15   to exclude the Ordinary Course Professionals from the requirements of 11 U.S.C. §§ 327 and 331.
16   Specifically, to require otherwise would render persons with only a tangential relationship to the
17   reorganization process subject to the retention and compensation requirements of 11 U.S.C. §§
18   327 through 331 at a potentially significant and unnecessary cost to estates and its creditors. The
19   cost of going through the approval process for both retention and compensation is
20   disproportionately high in relation to the cost of these Ordinary Course Professionals in
21   completing their work.

22   　　　Furthermore, the purposes that prior court approval of employment is intended to serve
23   are inapplicable to the proposed Ordinary Course Professionals. The primary purposes of
24   requiring court approval of professionals who are involved in, or integral to, administering the
25   estate, are to prevent conflicts of interest and protect debtors from hiring unnecessary professional
26   help. *See In re Carolina Sales Corp.,* 45 B.R. 750, 753 (Bankr. E.D.N.C. 1985). The Ordinary
27   Course Professionals have been employed by Debtors for some time and have not foisted
28   themselves upon the estate in response to its financial distress. Moreover, the financial

arrangements with the professionals were negotiated at arm's length and represent the prevailing market rate for such services. Placing the proposed Ordinary Course Professionals within the confines of 11 U.S.C. § 327 would not further any policy interests underlying these sections of the Bankruptcy Code and would, in fact, hinder the efficient administration of the estates.

## III.

## CONCLUSION

**WHEREFORE,** the Court should grant the Motion and authorize Debtors' employment and compensation of the Ordinary Course Professionals and any additional or other Ordinary Course Professionals that may be subsequently identified by Debtors pursuant to the notice procedures outlined in the Motion, in the ordinary course of Debtors' business and without being required to seek any other or further order or approval of the Court, except as expressly provided for herein.  Alternatively, if the Court believes some or all of the Ordinary Course Professionals are professional persons under 11 U.S.C. 327(a) or (e), the Debtors respectfully request that the Court authorize their employment under 11 U.S.C. 327(a) or (e).  Naturally, if the Court so requests, the Debtors will separately prepare and file employment applications for those Ordinary Course Professionals.

Dated:   September 8, 2010                    Respectfully submitted,

**ARENT FOX LLP**

By: /s/ *Andy S. Kong*
    Aram Ordubegian
    Andy S. Kong
    *Proposed* Attorneys for the
    Debtors and Debtors in Possession

# DECLARATION OF BARNEY NG

I, Barney Ng, hereby declare as follows:

1.     I am over 18 years of age. If called as a witness, I could and would competently testify with respect to the matters set forth in this declaration from my own personal knowledge or from knowledge gathered from others within the Debtors' organization, my review of relevant documents, or my opinion based upon my experience concerning the Debtors' operations.

2.     I am the managing member of each of the Debtors and have served in this capacity since May 8, 1998. I am authorized to speak on behalf of the Debtors in these proceedings.

3.     Before commencing these cases, Debtors employed certain professionals in the ordinary course of the Debtors' businesses (the "Ordinary Course Professionals") to assist it with various non-bankruptcy matters such as ensuring compliance with Nevada gaming regulations, hotel management, human resource functions and general legal services. The employment of the Ordinary Course Professionals here has taken place independently of Debtors' chapter 11 cases and has little effect on, and is not necessarily affected by, Debtors' chapter 11 filings. The Ordinary Course Professionals have historically been employed in the ordinary course of the Debtors' business. As a practical matter, I believe that it would be unduly burdensome and of little benefit to the estates to require the Ordinary Course Professionals to be subject to employment and compensation procedures generally applicable to bankruptcy professionals employed by the Debtors.

4.     Debtors wish to continue to use: (1) the law firm of Kelly Law Group, LLP; (2) the gaming compliance and regulation firm of KMC, Inc. ("KMC"); (3) the staffing firm of Elever Professional; and (4) the hospitality management firm of Onsite Consulting as Ordinary Course Professionals to continue to assist it with certain non-bankruptcy matters. The Ordinary Course Professionals will not represent the Debtors in the conduct of its bankruptcy cases or the administration of its estates.

5.     Debtors require periodic general legal assistance typically rendered by a general or in-house counsel. Since December 2009, Debtors have retained Kelly Law Group, LLP to render general legal advice and to act as "in-house" general counsel, including addressing issues

1   concerning the administration of the Debtors' hotel, spa and casino, drafting employment

2   agreements, and various other commercial agreements, advising on business transactions,

3   appearing on behalf of the Debtors before the Nevada Gaming Commission, and coordinating and

4   overseeing the Debtors' litigation conducted by other outside counsel.  Debtors, on average, have

5   paid Kelly Law Group, LLP $4,000 per month for its legal services and estimates that the

6   compensation to be paid to Kelly Law Group, LLP during the pendency of the Debtors'

7   bankruptcy cases will not exceed $40,000.  For purposes of full disclosure, Matthew Kelly of the

8   Kelly Law Group, LLP is my son-in-law.

9        6.      Since January 2010, KMC has provided gaming compliance services to the

10  Debtors to ensure that the Debtors are complying with all required Nevada gaming regulations.

11  Debtors, on average, have paid KMC $8,000 per month for its services and estimates that the

12  compensation to be paid to KMC during the pendency of the Debtors' bankruptcy cases will not

13  exceed $80,000.

14       7.      Since July 2010, Elever Professional has provided human resource services to the

15  Debtors to implement human resource policies, hiring and firing employees, and overall

16  managing the administrative functions.  Debtors, on average, have paid Elever Professional

17  $10,000 per month for its services and estimates that the compensation to be paid to Elever

18  Professional during the pendency of the Debtors' bankruptcy cases will not exceed $100,000.

19       8.      Since December 2009, Onsite Consulting has provided hotel management and

20  consulting services to the Debtors to make and implement significant operational changes to the

21  Debtors' customer marketing program and third party hotel booking systems (*i.e.*, Expedia, *etc.*)

22  and in general, increase the Debtors' revenue.  Debtors, on average, have paid Onsite Consulting

23  $60,000 per month for its services and estimates that the compensation to be paid to Onsite

24  Consulting during the pendency of the Debtors' bankruptcy cases will not exceed $300,000.

25  / / /

26  / / /

27  / / /

28  / / /

Motion re Ordinary Course Prof'l          - 14 -          CASE NO.  4:10-BK-48268-RJN

1     I declare under penalty of perjury under the laws of the United States of America that
2   the foregoing is true and correct.
3     Executed this 8th day of September 2010, at Lafayette, California.



Barney Ng

- 15 -

| In re: **Hi-Five Enterprises, LLC** | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 4:10-bk-48268 |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

A true and correct copy of the foregoing document described **NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING DEBTORS AND DEBTORS-IN-POSSESSION TO EMPLOY CERTAIN PROFESSIONALS IN THE ORDINARY COURSE OF BUSINESS AND TO SET PROCEDURES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BARNEY NG IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 8, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On September 8, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 8, 2010 | SIMONA FILIP | /s/ Simona Filip |
|---|---|---|
| Date | Type Name | Signature |

**ADDITIONAL SERVICE INFORMATION**

**I. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u> :**

Janet L. Chubb on behalf of Interested Party National Automobile Museum
jlc@jonesvargas.com, tbw@jonesvargas.com

Cecily A. Dumas on behalf of Creditor Konami Gaming, Inc.
cdumas@friedumspring.com, calas@friedumspring.com

Eric D. Goldberg on behalf of Creditor RE Reno, LLC
egoldberg@stutman.com

Lynette C. Kelly on behalf of U.S. Trustee Office of the U.S. Trustee/Oak
lynette.c.kelly@usdoj.gov

William J. Lafferty on behalf of Creditor NV Energy, Inc.
wlafferty@howardrice.com, aray@howardrice.com;jbeyl@howardrice.com;calendar@howardrice.com

Melissa Lor on behalf of Creditor International Game Technology
MLor@Schnader.com, wreinig@schnader.com

Daniel A. McDaniel on behalf of Creditor General Produce Co., Ltd.
damplc@pacbell.net

Office of the U.S. Trustee/Oak
USTPRegion17.OA.ECF@usdoj.gov, ltroxas@hotmail.com

Aron M. Oliner on behalf of Creditor Committee The Official Committee of General Unsecured Creditors for Hi-Five Enterprises, LLC
roliner@duanemorris.com

## II. SERVED BY U.S. MAIL:

Hon. Randall J. Newsome
U.S. Bankruptcy Court
Northern District
1300 Clay Street, Courtroom 220
Oakland, CA 94612

RE Reno LLC
c/o Jeffrey C. Krause
Stutman Treister & Glatt
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

IGT
9295 Prototype Dr.
Reno, NV  89521

Konami Gaming, Inc.
585 Trade Center Drive
Las Vegas, NV 89521

Raymond Leasing Corporation
P.O. Box 130
Greene, NY 13778

PDS Gaming Corporation-Nevada
6280 Annie Oakley Drive
Las Vegas, NV 89120

Wells Fargo Bank, National Association
3800 Howard Hughes Parkway, 4th Floor
Las Vegas, NV 89109

Young Electric Sign Company
775 E. Glendale Ave.
Sparks, NV 89101

Bank Wyoming
435 Arapahoe
Thermopolis, WY 82443-1232

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

| In re: **Hi-Five Enterprises, LLC** | CHAPTER 11 |
| --- | --- |
| Debtor(s). | CASE NUMBER 4:10-bk-48268 |

REQUEST FOR SPECIAL NOTICE

Lisa S. Gretchko, Esq.
Howard & Howard Attorneys PLLC
450 West Fourth Street
Royal Oak, MI 48067

Randy Munn Office of the City Attorney
City of Reno
1 E 1st St.
Reno, NV 88501

John F. Murtha
Law Offices of Woodburn and Wedge
6100 Neil Rd. #500
Reno, NV 89511

Jennifer A. Smith
Lionel, Sawyer and Collins
1100 Bank of America Plaza
50 West Liberty Street
Reno, NV 89501

Michael E. Wilson
Chief Deputy Attorney General
5420 Kietzke Ln. #202
Reno, NV 89511

GE Money Bank
c/o Recovery Management Systems Corp.
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605
Attn: Ramesh Singh