1   Aram Ordubegian (SBN 185142)
    Andy S. Kong (SBN 243933)
2   **ARENT FOX LLP**
    555 West Fifth Street, 48th Floor
3   Los Angeles, CA 90013-1065
    Telephone:   213.629.7400
4   Facsimile:   213.629.7401
    Email:       ordubegian.aram@arentfox.com
5                kong.andy@arentfox.com

6   *Proposed* General Bankruptcy and Restructuring
    Attorneys for Debtors and Debtors in Possession

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                    **OAKLAND DIVISION**

11  | | |
    |---|---|
    | In re: | Case No. 4:10-bk-48268-RJN |
    | **HI-FIVE ENTERPRISES, LLC,** a California limited liability company; **ONE SOUTH LAKE STREET, LLC,** a Nevada limited liability company; and **WILD GAME NG, LLC,** a Nevada limited liability company d/b/a The Siena Hotel Spa & Casino, | [Jointly Administered with Case Nos. 4:10-bk-48272-RJN and 4:10-bk-48270-RJN] |
    | | Chapter 11 |
    | | **NOTICE OF ERRATA RE MOTION FOR AUTHORITY TO OBTAIN POST-PETITION FINANCING** |
    | Debtors. | |
    | [ ] Affects all Debtors | **Hearing** |
    | [ ] Applies only to Hi-Five Enterprises, LLC | DATE:    September 29, 2010 |
    | [ ] Applies only to One South Lake Street, LLC | TIME:    11:30 a.m. |
    | [X] Applies only to Wild Game Ng, LLC | PLACE:   1300 Clay Street, Courtroom 220 Oakland, CA 94612 |

LA/327443.1

**TO: THE HONORABLE RANDALL J. NEWSOME; THE OFFICE OF THE U.S. TRUSTEE; AND ALL PARTIES ENTITLED TO NOTICE:**

Hi-Five Enterprises, LLC and its affiliated debtors and debtors-in-possession One South Lake Street, LLC and Wild Game NG, LLC in these jointly administered chapter 11 cases (collectively, the "Debtors") hereby submits this notice of errata regarding *Motion for Authority to Obtain Post-Petition Financing* (the "Motion") filed as Docket No. 99. The Debtors inadvertently submitted that the post-petition financing was being provided solely to pay various medical and dental insurance premiums of the Debtors' full-time employees. However, the post-petition financing is being provided so that the Debtors can pay their general liability insurance premiums such as property insurance. All other information in the Motion, including the amount of financing being provided and the financing terms, remain unchanged. Attached as Exhibit "1" to this Notice of Errata is a corrected copy of the Motion.

Dated:    September 13, 2010          **ARENT FOX LLP**


By: /s/ *Andy S. Kong*
    Aram Ordubegian
    Andy S. Kong
    *Proposed* Attorneys for the
    Debtors and Debtors-in-Possession

- 2 -

LA/234379.1

# EXHIBIT "1"

Aram Ordubegian (SBN 185142)
Andy S. Kong (SBN 243933)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
Email: ordubegian.aram@arentfox.com
kong.andy@arentfox.com

*Proposed* General Bankruptcy and Restructuring
Attorneys for Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>**HI-FIVE ENTERPRISES, LLC,** a California limited liability company; **ONE SOUTH LAKE STREET, LLC,** a Nevada limited liability company; and **WILD GAME NG, LLC,** a Nevada limited liability company d/b/a The Siena Hotel Spa & Casino,<br><br>Debtors.<br><br>[ ] Affects all Debtors<br><br>[ ] Applies only to Hi-Five Enterprises, LLC<br><br>[ ] Applies only to One South Lake Street, LLC<br><br>[X] Applies only to Wild Game Ng, LLC | Case No. 4:10-bk-48268-RJN<br><br>[Jointly Administered with Case Nos. 4:10-bk-48272-RJN and 4:10-bk-48270-RJN]<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR AUTHORITY TO OBTAIN POST-PETITION FINANCING; MEMORANDUM OF POINTS AND AUTHORITIES DECLARATION OF BARNEY NG IN SUPPORT THEREOF**<br><br><u>**Hearing**</u><br><br>DATE: September 29, 2010<br><br>TIME: 11:30 a.m.<br><br>PLACE: 1300 Clay Street, Courtroom 220<br>Oakland, CA 94612 |

LA/321310.1

**TO: THE HONORABLE RANDALL J. NEWSOME; THE OFFICE OF THE U.S. TRUSTEE; AND ALL PARTIES ENTITLED TO NOTICE:**

**PLEASE TAKE NOTICE** that on September 29, 2010, at 11:30 a.m., a hearing will be held before the Honorable Randall J. Newsome, United States Bankruptcy Judge, at Courtroom 220, 1300 Clay Street, Oakland, California 94612, on this *Motion for Authority to Obtain Post-Petition Financing* (the "Motion") filed by Hi-Five Enterprises, LLC and its affiliated debtors and debtors-in-possession in these jointly administered chapter 11 cases.[1]

**PLEASE TAKE FURTHER NOTICE** that the Motion requests that the Court authorize Debtors, and more specifically, Wild Game, to obtain post-petition financing pursuant to 11 U.S.C. § 364(b) and (c)(2) solely to pay their general liability insurance premiums. At a hearing held on August 25, 2010, the Debtors obtained use of cash on an interim basis pending final hearing, which is scheduled for September 29, 2010. While the Debtors are able to maintain basic operations through the use of cash, in order to pay the general liability insurance premiums, the Debtors require the post-petition financing.

Prior to the bankruptcy filings, and since the filings, the Debtors have been searching for financing so that the Debtors could pay the outstanding insurance premiums. To that end, the Debtors have not been able to obtain unsecured credit nor credit under 11 U.S.C. § 364(b) especially given that the Debtors are primarily asset based and asset-base lenders have refused to provide financing based on the pre-existing security interests. The Debtors have finally been able to secure financing from IPFS Corporation of California ("Lender") who proposes to provide the Debtors with a $179,980.50 credit line in accordance with the terms and conditions set forth in the Premium Finance Agreement (the "Agreement") attached hereto as Exhibit "A". The salient terms of the proposed financing are as follows:

1.        Lender shall provide a working line of credit to Wild Game in the amount of

---

[1]  Hi-Five's debtor affiliates are One South Lake Street, LLC, a Nevada limited liability company ("One South") and Wild Game NG, LLC, a Nevada limited liability company ("Wild Game"). Hi-Five, One South and Wild Game are collectively referred to as the "Debtors".

Case: 10-48268   Doc# 109   Filed: 09/13/10   Entered: 09/13/10 17:25:48   Page 5 of 23

$179,980.50 (the "Line of Credit") solely so that Wild Game can pay its general liability insurance premiums;

2. The outstanding amount due and owing pursuant to the Line of Credit shall accrue interest at the rate of 7% per annum;

3. The outstanding amount under the Agreement shall be due and payable in full on the earlier of (the "Payment Due Date"): (i) the effective date of any confirmed plan of reorganization; (ii) appointment of Chapter 11 Trustee; (iii) conversion of these cases to one under Chapter 7 of the Bankruptcy Code; or (iv) dismissal of the cases. Notwithstanding the Payment Due Date, the parties may extend the terms of the Agreement in writing executed by all parties hereto without further order of the Court or a hearing.

4. The Line of Credit shall be secured by perfected liens in: (i) the unearned or return premiums and dividends which may become payable under the insurance policies identified in the Agreement pursuant to 11 U.S.C. § 364(c)(2); and (ii) loss payments which reduce the unearned premiums, subject to any mortgage or loss payee interests, pursuant to 11 U.S.C. § 364(c)(2) (collectively, the unearned or returned premiums and dividends and the loss payments are referred to hereinafter as the "Collateral").

5. The Lender's liens and security interests shall be senior to the rights of the estates in this or any subsequent proceeding under the Bankruptcy Code and to the rights of any other person or entity claiming a security interest in the Collateral, except, with respect to any loss payments which reduce the unearned premiums, the rights of mortgagees or other loss payees.

6. In the event that he Debtors default upon any of the terms of the Agreement and do not cure such default as and within the time period provided therein, Lender may, without moving for relief from the automatic stay under 11 U.S.C. § 362 and without further order of this Court, exercise such rights as it would have under state law but for the pendency of this proceeding, cancel all insurance policies identified in the Agreement or any amendments thereto.

- 3 -

1    7.    The obligations due and owing under the Agreement shall be entitled to

2    administrative priority under 11 U.S.C. § 364(b).

3        Debtors believe that the proposed financing is extremely favorable for the estates.

4    Specifically, the interest rate is relatively low, the capital infusion is necessary to pay the

5    Debtors' general liability insurance premiums, and the Lender is simply being granted a security

6    interest in unencumbered assets to obtain the Line of Credit.

7        **PLEASE TAKE FURTHER NOTICE** that, as set forth in greater detail in the

8    annexed Memorandum of Points and Authorities, there are good and sufficient grounds to

9    approve the Motion.  Debtors believe that the relief requested in the Motion is in the best

10    interests of Debtors' estates and its creditors and that there are good and sufficient grounds to

11    grant the Motion.

12        **PLEASE TAKE FURTHER NOTICE** that, pursuant to Bankruptcy Local

13    Rule 9014-1, any response or opposition to the Motion must be in writing and must be filed

14    with the Court and served upon the undersigned counsel at least 7 days before the hearing

15    date.  The failure to timely file and serve a written opposition may be deemed by the Court to

16    be consent to the granting of the relief requested in the Motion.

17        **WHEREFORE**, based upon this Motion, the annexed Memorandum of Points and

18    Authorities, the annexed Declaration of Barney Ng in Support of the Motion (the "Ng

19    Declaration"), and the record in these cases, Debtors hereby move this Court for the entry of an

20    order:

21        1    granting the Motion in its entirety;

22        2.    authorizing Debtors to obtain post-petition financing in accordance with the

23    terms and conditions set forth in the Agreement; and

24        3.    granting Debtors such other and further relief as is necessary and appropriate.

25

26                    *[signature on following page]*

27

28

                            - 4 -

Dated:   September 13, 2010

**ARENT FOX LLP**


By: /s/ *Andy S. Kong*
　　Aram Ordubegian
　　Andy S. Kong
　　*Proposed* Attorneys for the
　　Debtors and Debtors-in-Possession

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 5 -

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.      Need for DIP Financing.**

At the hearing held on August 25, 2010, the Debtors obtained use of cash on an interim basis pending a final hearing, which is scheduled for September 29, 2010. While the Debtors are able to maintain basic operations through the use of cash, in order to pay the Debtors' general liability insurance premiums, the Debtors require the post-petition financing.

**B.      Proposed DIP Financing.**

Prior to the bankruptcy filings, and since the filings, the Debtors have been searching for financing so that the Debtors could pay the outstanding insurance premiums. To that end, the Debtors have not been able to obtain unsecured credit nor credit under 11 U.S.C. § 364(b) especially given that the Debtors are primarily asset based and asset-base lenders have refused to provide financing based on the pre-existing security interests. The Debtors have finally been able to secure financing from IPFS Corporation of California ("Lender") who proposes to provide the Debtors with a $179,980.50 credit line in accordance with the terms and conditions set forth in the Agreement attached hereto as Exhibit "A". The salient terms of the proposed financing are as follows:

1.      Lender shall provide a working line of credit to Wild Game in the amount of $179,980.50 (the "Line of Credit") solely so that Wild Game can pay its general liability insurance premiums;

2.      The outstanding amount due and owing pursuant to the Line of Credit shall accrue interest at the rate of 7% per annum;

3.      The outstanding amount under the Agreement shall be due and payable in full on the earlier of (the "Payment Due Date"): (i) the effective date of any confirmed plan of reorganization; (ii) appointment of Chapter 11 Trustee; (iii) conversion of these cases to one under Chapter 7 of the Bankruptcy Code; or (iv) dismissal of the cases. Notwithstanding the

- 6 -

Payment Due Date, the parties may extend the terms of the Agreement in writing executed by all parties hereto without further order of the Court or a hearing.

4.  The Line of Credit shall be secured by perfected liens in: (i) the unearned or return premiums and dividends which may become payable under the insurance policies identified in the Agreement pursuant to 11 U.S.C. § 364(c)(2); and (ii) loss payments which reduce the unearned premiums, subject to any mortgage or loss payee interests, pursuant to 11 U.S.C. § 364(c)(2) (collectively, the unearned or returned premiums and dividends and the loss payments are referred to hereinafter as the "Collateral").

5.  The Lender's liens and security interests shall be senior to the rights of the estates in this or any subsequent proceeding under the Bankruptcy Code and to the rights of any other person or entity claiming a security interest in the Collateral, except, with respect to any loss payments which reduce the unearned premiums, the rights of mortgagees or other loss payees.

6.  In the event that he Debtors default upon any of the terms of the Agreement and do not cure such default as and within the time period provided therein, Lender may, without moving for relief from the automatic stay under 11 U.S.C. § 362 and without further order of this Court, exercise such rights as it would have under state law but for the pendency of this proceeding, cancel all insurance policies identified in the Agreement or any amendments thereto.

7.  The obligations due and owing under the Agreement shall be entitled to administrative priority under 11 U.S.C. § 364(b).

Debtors believe that the proposed financing is extremely favorable for the estates. Specifically, the interest rate is relatively low, the capital infusion is necessary to pay the Debtors' general liability insurance premiums, and the Lender is simply being granted a security interest in unencumbered assets to obtain the Line of Credit.

- 7 -

## II.

## ARGUMENT

Pursuant to 11 U.S.C. §§ 364(b) and (c)(2) and 503(b)(1), Debtors request authority to secure a credit line in the amount of $179,980.50 from Lender in accordance with the terms and conditions set forth in the Agreement attached hereto as Exhibit "A".

Section 364 of the Bankruptcy Code is structured with an escalating series of inducements which a debtor-in-possession may offer to attract credit post-petition. *Sapir v. CPQ Colorchrome Corp. (In re Photo Promotion Assoc., Inc.)*, 87 B.R. 835, 839 (Bankr.S.D.N.Y. 1988), *aff'd* 881 F.2d 6 (2nd Cir. 1989). Therefore, where a trustee or debtor-in-possession cannot otherwise obtain unsecured post-petition credit, such credit may be obtained under certain carefully proscribed conditions. *KS Investments v. T.M. Sweeney & Sons LTL Serv., Inc. (In re T.M. Sweeney & Sons LTL Serv., Inc.)*, 131 B.R. 984, 989 (Bankr.N.D.Ill. 1991). For example, if creditors are unwilling to extend unsecured credit, further inducements are offered, with court approval after notice and a hearing including, without limitation, liens equal to or senior to existing liens on encumbered property in accordance with 11 U.S.C. § 364(d). *Photo Promotion Assoc., Inc., supra* 87 B.R. at 839.

Section 364(c) of the Bankruptcy Code also enumerates certain incentives that a court may grant to post-petition lenders. The list provided in 11 U.S.C. § 364(c) is not exhaustive. Courts frequently authorize the use of inducements not specified in the statute. *See, e.g., Unsecured Creditors Comm. v. First Nat'l Bank & Trust Co. of Escanaba (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 599 (6th Cir. 1987) (affirming financing order which prohibited any challenges to the validity of already existing liens); *In re Defender Drug Stores*, 126 B.R. 76 (Bankr.D.Ariz. 1991) (authorizing enhancement fee to post-petition lender), *aff'd* 145 B.R. 312, 316 (9th Cir. 1992) ("[b]ankruptcy courts . . . have regularly authorized postpetition financial arrangements containing lender incentives beyond the explicit priorities and liens specified in section 364"); *In re Antico Mfg. Co.*, 31 B.R. 103 (Bankr.E.D.N.Y. 1983) (authorizing lien on pre-petition collateral to secure post-petition indebtedness).

Two factors courts consider in determining whether to authorize post-petition financing

- 8 -

which contemplates the granting of a security interest in favor of the lender are (1) whether the debtor is unable to obtain unsecured credit per 11 U.S.C. § 364(b), *i.e.*, by allowing a lender only an administrative claim per 11 U.S.C. § 364(b)(1)(A); and (2) whether the terms of the transaction are fair, reasonable and adequate given the circumstances of the debtor-borrower and the proposed lender. *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr.E.D.Pa. 1987); *see also, In re Aqua Assoc.*, 123 B.R. 192, 195 (Bankr.E.D.Pa. 1991).

As discussed above, prior to the bankruptcy filings, and since the filings, the Debtors have been searching for financing. To that end, the Debtors have not been able to obtain unsecured credit nor credit under 11 U.S.C. § 364(b) especially given that the Debtors are primarily asset base and asset-based lenders have refused to provide financing based on the pre-existing security interests. The Debtors have finally been able to secure financing from Lender who proposes to provide the Debtors with a $179,980.50 credit line at a very reasonable interest rate of 7% per annum. Moreover, in order to pay the general liability insurance premiums, the Debtors require the post-petition financing. Under the circumstances, the Debtors believe the proposed terms of the Agreement are extremely fair and reasonable and the best terms that the Debtors can get in the open market.

While in determining whether to approve such a transaction, a court is authorized to act in its informed discretion, a court should give broad deference to the business decision of a debtor-in-possession, particularly with respect to a debtor's business judgment regarding the need for and proposed use of funds. *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr.S.D.N.Y. 1990); *Richmond Leasing Co. v. Capital Bank. N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985). As the court noted in *Ames Dep't Stores*, "the court's discretion under section 364 is to be utilized on the grounds that permit the reasonable business judgment [of the Debtor] to be exercised . . ." *Ames Dep't Stores, Inc., supra* 115 B.R. at 40.

Here, the Debtors, in the exercise of their business judgment, have concluded that obtaining post-petition financing from the Lender is in the clear best interests of the Debtors' estates and its creditors because without such funds, the Debtors will not be able to pay its general liability insurance premiums which would undoubtedly open the Debtors to liability

- 9 -

from various parties, including the Nevada Gaming Commission. The infusion of cash will permit the Debtors to pay those premiums for the benefit of the estates and its creditors.

### III.

### CONCLUSION

WHEREFORE, based on the foregoing, the Debtors respectfully request that the Court enter an order:

1    granting the Motion in its entirety;

2.    authorizing Debtors to obtain post-petition financing in accordance with the terms and conditions set forth in the Agreement; and

3.    granting Debtors such other and further relief as is necessary and appropriate.

Dated: September 13, 2010                    Respectfully submitted,

                                             **ARENT FOX LLP**

                                             By: /s/ *Andy S. Kong*
                                             Andy S. Kong
                                             *Proposed* Attorneys for the
                                             Debtors and Debtors-in-Possession

- 10 -

## DECLARATION OF BARNEY NG

I, Barney Ng, declare as follows:

1.     I am over 18 years of age.  If called as a witness, I could and would competently testify with respect to the matters set forth in this declaration from my own personal knowledge or from knowledge gathered from others within the Debtors' organization, my review of relevant documents, or my opinion based upon my experience concerning the Debtors' operations.

2.     I am the managing member of each of the Debtors and have served in this capacity since May 8, 1998.  I am authorized to speak on behalf of the Debtors in these proceedings.

3.     At the hearing held on August 25, 2010, the Debtors obtained use of cash on an interim basis pending a final hearing, which is scheduled for September 29, 2010.  While the Debtors are able to maintain basic operations through the use of cash, in order to pay the general liability insurance premiums, the Debtors require post-petition financing.

4.     Prior to the bankruptcy filings, and since the filings, I have been searching for financing so that the Debtors could pay outstanding insurance premiums.  To that end, I have not been able to obtain unsecured credit nor credit under 11 U.S.C. § 364(b) for the Debtors especially given that the Debtors are primarily asset based and asset-base lenders have refused to provide financing based on the pre-existing security interests.  I have finally been able to secure financing from IPFS Corporation of California ("Lender") on behalf of the Debtors who proposes to provide the Debtors with a $179,980.50 credit line in accordance with the terms and conditions set forth in the Premium Finance Agreement (the "Agreement"), a true and correct copy of which is attached hereto as Exhibit "A".

5.     I believe that the proposed financing is extremely favorable for the estates. Specifically, the interest rate is relatively low, the capital infusion is necessary to pay the general liability insurance premiums, and the Lender is simply being granted a security interest in unencumbered assets to obtain the Line of Credit.

6.     In my business judgment, I believe obtaining post-petition financing from the Lender is in the best interests of the Debtors' estates and its creditors because without such funds, the Debtors will not be able to pay its general liability insurance premiums which

would open the Debtors to liability from various parties, including the Nevada Gaming Commission. The infusion of cash will permit the Debtors to pay those premiums for the benefit of the estates and its creditors.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed September 13, 2010, at Lafayette, California.

*/s/ Barney Ng [submitted w/ permission]*
Barney Ng

# EXHIBIT "A"

1800 SUTTER ST., SUITE 365
CONCORD, CA 94520
(800)473-1171 FAX: (800)765-5355

**PREMIUM FINANCE AGREEMENT**



| | | | | |
|---|---|---|---|---|
| **A** | **CASH PRICE (TOTAL PREMIUMS)** | **$249,974.00** | **AGENT** (Name & Place of business) | **INSURED** (Name and residence or business) |
| | | | SIBERT INSURANCE | WILD GAME NG |
| **B** | **CASH DOWN PAYMENT** | **$69,993.50** | | ATTN ACCOUNTS PAYABLE |
| | | | 215 FOSS CREEK CIRCLE | ONE SOUTH LAKE STREET |
| **C** | **PRINCIPAL BALANCE (A MINUS B)** | **$179,980.50** | HEALDSBURG    CA   95448 | RENO        NV   89501-1556 |
| | | | (707)433-5359 | (925)283-1771 |

**LOAN DISCLOSURE**                                   Quote Number: 25408

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7 % | $4,756.54 | $179,980.50 | $184,737.04 |

**YOUR PAYMENT SCHEDULE WILL BE**

| Number of Payments | Amount of Payments | When Payments Are Due Beginning: | | ITEMIZATION OF THE AMOUNT FINANCED: THE FULL AMOUNT FINANCED WAS PAID TO THE INSURANCE COMPANY. |
|---|---|---|---|---|
| 8 | $23,092.13 | MONTHLY 9/1/2010 | | |

**Security:** You are giving a security interest in the unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium of the policies.
**Late Charges:** A late charge will be imposed on any installment in default 5 days or more. This late charge will be 5% of the installment due.

**Prepayment:** If you pay your account off early, you may be entitled to a refund of a portion of the finance charge in accordance with Rule of 78's. The finance charge includes a predetermined interest rate plus a non-refundable service/origination fee of $25. See the contract below and on the reverse side for additional information about nonpayment, default and penalties.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL TRMS | PREMIUM |
|---|---|---|---|---|---|
| PENDING | 8/1/2010 | ST PAUL FIRE AND MARINE INS CO ISU STETSON-BEEMER & CO INC | UMBRLA | 12 | $28,934.00 |
| | | | FEES | | $4,000.00 |
| PENDING | 8/1/2010 | ZURICH AMERICAN INSURANCE CO ISU STETSON-BEEMER & CO INC | PKG | 12 | $134,470.00 |

|  |  |  |
|---|---|---|
| (CHECK CORRECT BOX)  ☐ PERSONAL  ☑ COMMERCIAL | Continued On Schedule A | Broker Fee        $3,000.00 |
| | | TOTAL $     $249,974.00 |

The undersigned insured directs IPFS Corporation dba Premium Financing Specialists Corp. (herein, "Lender") to pay the premiums on the policies described above. In consideration of such premium payments the insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender the amount stated as Total of Payments in accordance with the Payment Schedule, both as shown in Loan Disclosure, subject to the Provisions herein set forth.
The named insured:
1. Assigns to Lender as security for the total amount payable hereunder all unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium which become payable under the policies listed above, as to all of which insured gives to Lender a security interest.
2. Irrevocably appoints Lender **attorney-in-fact** of the insured with full power of substitution and full authority upon default to cancel all policies above identified, receive all sums assigned to Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this agreement.
3. Understands that the finance charge begins to accrue as of the earliest policy effective date.

4. Agrees to all provisions set out on pages 1 and 2 of this agreement.
NOTICE:
A. Do not sign this agreement before you read it or if it contains any blank space.
B. You are entitled to a completely filled in copy of this agreement.
C. Under the law, you have the right to pay in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge.
D. Keep your copy of this agreement to protect your legal rights.

| | |
|---|---|
| Signature of Insured or Authorized Agent | DATE |

The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

| | |
|---|---|
| SIGNATURE OF AGENT | DATE |

(03/10) Copyright 2010 IPFS Corporation                Page 1 of 2                08/18/10          PLUS - NVC

Case: 10-48268    Doc# 109    Filed: 09/13/10    Entered: 09/13/10 17:25:48    Page 17 of 23

Insured and Lender agree that:

**5. EFFECTIVE DATE:** This Agreement shall be effective when written acceptance is mailed to the Insured by Lender.

**6. DELINQUENT PAYMENTS:** The acceptance by Lender of one or more late payments from the Insured shall not estop Lender or be a waiver of the the rights of Lender to exercise all of its rights hereunder in the event of any subsequent late payment.

**7. CANCELLATION:** Lender may cancel the insurance policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the Insured does not pay any installment according to the terms of this Agreement and the unpaid balance due to Lender shall be immediately payable by the Insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender.

**8. CANCELLATION CHARGES:** If cancellation occurs, the Insured agrees to pay a finance charge on the balance due at the contract rate of interest until the balance is paid in full or until such other dates as required by law.

**9. INSUFFICIENT FUNDS (NSF) CHARGES:** If an Insured's check or electronic funding is dishonored for any reason, the Insured will pay to Lender a fee, if permitted by law, of $15 or the maximum permitted by law. (Not applicable in AL and KY)

**10. MONEY RECEIVED AFTER CANCELLATION:** Any payments made to Lender after Lender' Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the Insured's account without any obligation on the part of Lender to request reinstatement of the policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled to the money. In the event that Lender does request a reinstatement of the policy on behalf of the Insured, such a request does not guarantee that coverage under the policy will be reinstated or continued. Only the insurance company has authority to reinstate the policy. The Insured agrees that Lender has no liability to the Insured if the policy is not reinstated.

**11. ASSIGNMENT:** The Insured agrees not to assign any policy listed hereon or any interest therein except for the interest of mortgages or loss payees, without the written consent of Lender, that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the Insured, and that all agreements made by the Insured hereunder and all rights and benefits conferred upon Lender shall insure to the benefit of Lender's successors and assigns (and any assignees thereof).

**12. INSURANCE AGENT OR BROKER:** The Insured agrees that: the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor is to make representations, orally or in writing, to the Insured on Lender' behalf (except to the extent expressly required by applicable law).

**13. FINANCING NOT A CONDITION:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance.

**14. COLLECTION COSTS:** Insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law, if this Agreement is referred to an attorney, who is not a salaried employee of Lender, to collect any money Insured owes under this Agreement. (Not applicable in KY or MD)

**15. LIMITATION OF LIABILITY:** The Insured agrees that Lender's liability to the Insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender' gross negligent or willful misconduct. (Not applicable in KY)

**16. CLASSIFICATION AND FORMATION OF AGREEMENT:** This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the Insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy.

**17. REPRESENTATIONS AND WARRANTIES:** The Insured represents that the Insured is not insolvent or presently the subject of any insolvency proceeding (or if the Insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), if the Insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the Insured, and all parties responsible for payment of the premium are named and have signed this Agreement.

**18. ENTIRE DOCUMENT:** This document is the entire Agreement between Lender and the Insured and can only be changed in writing and signed by both parties except that the Insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the Insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. The laws of the state indicated in the Insured's address on the Agreement will govern this Agreement.

## AGENT'S REPRESENTATION

The agent/broker executing this agreement represents, warrants and agrees: (1) the Insured has received a copy of this Agreement and has authorized this transaction, the Insured's signature is genuine, and the down payment has been received from the Insured in cash, (2) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (3) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (4) the policies can be cancelled by the Insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (5) there are no bankruptcy, receivership, or insolvency proceedings affecting the Insured, (6) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent in preparing this agreement, and (7) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable) (8) to hold in trust for Lender any payments made or credited to the Insured through or to you directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender upon demand to satisfy the outstanding indebtness of the Insured.

Case: 10-48268   Doc# 109   Filed: 09/13/10   Entered: 09/13/10 17:25:48   Page 18 of 23

| AGENT | INSURED |
|---|---|
| SIBERT INSURANCE | WILD GAME NG |
| | ATTN ACCOUNTS PAYABLE |
| 215 FOSS CREEK CIRCLE | ONE SOUTH LAKE STREET |
| HEALDSBURG    CA   95448 | RENO           NV  89501-1656 |
| (707)433-5359 | (925)283-1771 |

## SCHEDULE A

Quote Number: 25408

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL TRMS | PREMIUM |
|---|---|---|---|---|---|
| PENDING | 8/1/2010 | AFFILIATED FM INSURANCE COMPANY ISU STETSON-BEEMER & CO INC | PRPRTY | 12 | $70,596.00 |
| | | | FEES | | $3,000.00 |
| PENDING | 8/1/2010 | GREAT AMERICAN INSURANCE CO ISU STETSON-BEEMER & CO INC | CRIME | 12 | $7,974.00 |

| In re: **Hi-Five Enterprises, LLC** | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 4:10-bk-48268 |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

A true and correct copy of the foregoing document described **NOTICE OF ERRATA RE MOTION FOR AUTHORITY TO OBTAIN POST-PETITION FINANCING** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 13, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On September 13, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 13, 2010 | SIMONA FILIP | /s/ Simona Filip |
|---|---|---|
| Date | Type Name | Signature |

| In re: **Hi-Five Enterprises, LLC** | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 4:10-bk-48268 |

## ADDITIONAL SERVICE INFORMATION

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") :**

Janet L. Chubb on behalf of Interested Party National Automobile Museum
jlc@jonesvargas.com, tbw@jonesvargas.com

Cecily A. Dumas on behalf of Creditor Konami Gaming, Inc.
cdumas@friedumspring.com, calas@friedumspring.com

Eric D. Goldberg on behalf of Creditor RE Reno, LLC
egoldberg@stutman.com

Lynette C. Kelly on behalf of U.S. Trustee Office of the U.S. Trustee/Oak
lynette.c.kelly@usdoj.gov

William J. Lafferty on behalf of Creditor NV Energy, Inc.
wlafferty@howardrice.com, aray@howardrice.com;jbeyl@howardrice.com;calendar@howardrice.com

Melissa Lor on behalf of Creditor International Game Technology
MLor@Schnader.com, wreinig@schnader.com

Daniel A. McDaniel on behalf of Creditor General Produce Co., Ltd.
damplc@pacbell.net

Office of the U.S. Trustee/Oak
USTPRegion17.OA.ECF@usdoj.gov, ltroxas@hotmail.com

Aron M. Oliner on behalf of Creditor Committee The Official Committee of General Unsecured Creditors for Hi-Five Enterprises, LLC
roliner@duanemorris.com

LA/327840.1

## II. SERVED BY U.S. MAIL:

Hon. Randall J. Newsome
U.S. Bankruptcy Court
Northern District
1300 Clay Street, Courtroom 220
Oakland, CA 94612

RE Reno LLC
c/o Jeffrey C. Krause
Stutman Treister & Glatt
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

IGT
9295 Prototype Dr.
Reno, NV  89521

Konami Gaming, Inc.
585 Trade Center Drive
Las Vegas, NV 89521

Raymond Leasing Corporation
P.O. Box 130
Greene, NY 13778

PDS Gaming Corporation-Nevada
6280 Annie Oakley Drive
Las Vegas, NV 89120

Wells Fargo Bank, National Association
3800 Howard Hughes Parkway, 4th Floor
Las Vegas, NV 89109

Young Electric Sign Company
775 E. Glendale Ave.
Sparks, NV 89101

Bank Wyoming
435 Arapahoe
Thermopolis, WY 82443-1232

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

LA/327840.1

Premium Financing
1800 Sutter St., Suite 365
Concord, CA  94520

<u>REQUEST FOR SPECIAL NOTICE</u>

Lisa S. Gretchko, Esq.
Howard & Howard Attorneys PLLC
450 West Fourth Street
Royal Oak, MI 48067

Randy Munn Office of the City Attorney
City of Reno
1 E 1st St.
Reno, NV 88501

John F. Murtha
Law Offices of Woodburn and Wedge
6100 Neil Rd. #500
Reno, NV 89511

Jennifer A. Smith
Lionel, Sawyer and Collins
1100 Bank of America Plaza
50 West Liberty Street
Reno, NV 89501

Michael E. Wilson
Chief Deputy Attorney General
5420 Kietzke Ln. #202
Reno, NV 89511

GE Money Bank
c/o Recovery Management Systems Corp.
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605
Attn: Ramesh Singh