Aram Ordubegian (SBN 185142)
Mette H. Kurth (SBN 187100)
Andy S. Kong (SBN 243933)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
E-mail: ordubegian.aram@arentfox.com
kurth.mette@arentfox.com
kong.andy@arentfox.com

*Proposed* General Bankruptcy and Restructuring
Attorneys for Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re: | Case No. 4:10-bk-48268-RJN |
| **HI-FIVE ENTERPRISES, LLC**, a California limited liability company; **ONE SOUTH LAKE STREET, LLC**, a Nevada limited liability company; and **WILD GAME NG, LLC**, a Nevada limited liability company d/b/a The Siena Hotel Spa & Casino, | [Jointly Administered with Case Nos.: 4:10-bk-48270-RJN and 4:10-bk-48272-RJN] Chapter 11 |
| Debtors and Debtors-In-Possession. | **APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT OF INNOVATION CAPITAL, LLC AS EXCLUSIVE FINANCIAL ADVISOR AND PLACEMENT AGENT FOR THE DEBTORS AND DEBTORS-IN-POSSESSION IN CONNECTION WITH PLACEMENT OF DIP FINANCING AND RELATED TRANSACTIONS, EFFECTIVE AS OF SEPTEMBER 20, 2010; DECLARATION OF MATTHEW J. SODL FILED CONCURRENTLY HEREWITH** |
| [X] Affects all Debtors | |
| [ ] Applies only to Hi-Five Enterprises, LLC | |
| [ ] Applies only to One South Lake Street, LLC | |
| [ ] Applies only to Wild Game Ng, LLC | *[NO HEARING REQUIRED PURSUANT TO B.L.R. 9014-1(b)]* |

LA/331966.1

1   Hi-Five Enterprises, LLC ("Hi-Five"), together with its debtor affiliates, One South

2   Lake Street, LLC ("One South") and Wild Game Ng, LLC ("Wild Game"), the debtors

3   and debtors in possession herein (collectively, the "Debtors"), hereby file this application

4   (the "Application") for an order authorizing the retention and employment of Innovation

5   Capital, LLC ("Innovation") as exclusive financial advisor and DIP financing placement

6   agent for the Debtors in connection with placement of DIP financing and related

7   transactions, effective as of September 20, 2010. In support of this Application, the

8   Debtors concurrently submit the Declaration of Matthew J. Sodl (the "Sodl Declaration"),

9   incorporated herein by reference, and respectfully represent as follows:

10  **I.**

11  **JURISDICTION AND VENUE**

12      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

13  1334(b). Venue of these proceedings is proper in this judicial district pursuant to 28

14  U.S.C. §§ 1408 and 1409. Bankruptcy Code sections 327 and 328 and Federal Rules of

15  Bankruptcy Procedure 2014, 2016 and 5002 and Local Rule 9006-1 are the statutory

16  predicates for the relief sought by this Application.

17  **II.**

18  **RELIEF REQUESTED**

19  **A.      The Debtors' Bankruptcy Filing and Proposed Transactions.**

20      On July 21, 2010 (the "Petition Date"), the Debtors filed separate voluntary

21  petitions for relief under Chapter 11 of Title 11 of the United States Code (the

22  "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their

23  affairs as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No request

24  has been made for the appointment of a trustee or examiner. An Official Committee of

25  Unsecured Creditors was appointed in the above-captioned cases (collectively, the

26  "Cases") on August 11, 2010.

27

28

- 2 -

The Debtors seek to either restructure their existing liabilities or engage in a sale, merger or acquisition (collectively, the "Transaction") of their equity interest in, or substantially all of the assets of, Wild Game, including the Siena Hotel Spa and Casino ("Siena") in Reno, Nevada. In connection with the Transaction, the Debtors seek Court approval to retain Innovation at the expense of the Debtors' estates to provide critical financial services to the Debtors and for Innovation to act as exclusive placement agent of debtor-in-possession ("DIP") financing associated with the Transaction.

The Debtors respectfully request entry of the form of Order attached hereto as **Exhibit "1"**, effective as of September 20, 2010, authorizing the employment and retention of Innovation in accordance with the terms of the letter agreement between Wild Game and Innovation attached hereto as **Exhibit "2"**, dated as of and effective as of September 20, 2010, (the "Engagement Letter").

**B.     The Debtors' Selection of Innovation as Financial Advisor and Exclusive Placement Agent.**

Innovation is an investment banking and financial advisory firm with expertise in the areas of mergers and acquisitions, corporate finance, restructuring and valuation advisory services. The Debtors have selected Innovation as their financial advisor for the Transaction because of Innovation's diverse experience, knowledge, recognized expertise, and reputation in providing financial advisory services in connection with the gaming, leisure and hospitality industries, its understanding of the issues involved in chapter 11 cases, and because the Debtors believe that Innovation possesses sufficient resources and is well qualified to provide the financial advisory services that will be required in these Cases.

Innovation has industry-specific expertise and is a leading advisor to companies as well as creditors in complex and high-profile restructurings and bankruptcies that involve gaming companies. Innovation has advised in the following restructuring advisory assignments, among others:  Centaur, LLC; Aladdin Gaming Holdings; Lake of the

- 3 -

Torches Economic Development Corporation; Greektown Holdings, Inc.; President Casinos; Choctaw Resort Development Enterprise and American Gaming Group. As a result of its work on a significant share of gaming restructuring assignments, Innovation is a seasoned and experienced restructuring advisory firm in the gaming industry.

Matthew J. Sodl, a Managing Director of Innovation, will lead all of the day-to-day aspects of this engagement. Mr. Sodl has been providing restructuring services to gaming industry clients since 2001. He is well-suited to provide the services required by the Debtors and his advisory experience extends across many industries, including gaming and entertainment. His most notable distressed asset sale assignments include the $82 million asset sale transaction of President Casino's Biloxi, Mississippi gaming assets pursuant to section 363 of the Bankruptcy Code, the $29 million asset sale transaction of Furr's Restaurant Group pursuant to section 363 of the Bankruptcy Code and the $10 million asset sale transaction of Fortune Valley Hotel & Casino in Central City, Colorado pursuant to section 363 of the Bankruptcy Code.

The following Innovation professionals will be responsible for providing professional services to the Debtors: Matthew J. Sodl, Kevin Scheible, and Alex Wang. Additional staff will be provided as needed. A summary of the experience and qualifications of Innovation and its professionals is among the information contained in the Declaration of Matthew J. Sodl to be filed concurrently herewith in support of this Application.

**C.     The Engagement Letter and Scope of Services.**

The Debtors have negotiated the terms of the Engagement Letter, which sets forth the services that Innovation will provide to the Debtors, for the one-year term of the engagement, as well as the manner in which Innovation will be compensated for such services. To date, Innovation has provided, and/or will provide on a going-forward basis upon the Court's approval of the Application, the following services in connection with the Transaction:

- 4 -

(a)     Act as exclusive placement agent with regard to securing DIP financing and other aspects of financing for the Transaction, as requested and mutually agreed;

(b)     Assist the Debtors in identifying, contacting and evaluating candidates for a potential Transaction and assist the Debtors in negotiating and consummating the Transaction, as requested and mutually agreed;

(c)     Advise the Debtors on the current state of the market with respect to the Transaction, as requested and mutually agreed; and

(d)     Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of the Transaction, as requested and mutually agreed.

Innovation has stated its desire and willingness to act in these Chapter 11 cases and to render the necessary professional services as financial advisor for the Debtors in connection with the Transaction.

### III.

### <u>COMPENSATION</u>

Subject to this Court's approval, and in accordance with 11 U.S.C. §§ 328 and 1107, the Debtors and Innovation have agreed to the compensation structure set forth in the Engagement Letter (the "Fee and Expense Structure"), a partial summary of which is provided below, in consideration for the services to be rendered by Innovation in these Cases.[1]

Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title . . . on any reasonable terms and conditions of employment, including on a retainer, or an hourly basis, on a fixed or percentage fee

---

[1] To the extent there is any inconsistency in connection with the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control. The Engagement Letter contains additional provisions for compensation that are not set forth in this Application.

- 5 -

basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328(a) therefore permits the Court to approve the Fee and Expense Structure set forth in the Engagement Letter in connection with the Debtors' retention of Innovation.

### A. The Fee and Expense Structure.

The Debtors have agreed to pay Innovation Capital according to the Fee and Expense Structure, subject to this Court's approval and in compliance with further orders of this Court, as follows:

(a) <u>Expense Reimbursements</u>. Reimbursement of all reasonable and necessary out-of-pocket expenses incurred during the engagement, including, but not limited to, travel and lodging, direct identifiable data processing and communication charges, courier services, legal fees, and other necessary expenditures described in invoices setting forth in reasonable detail the nature and amount of such expenses. Expenses in excess of $5,000 shall be approved in writing, in advance. Under the Engagement Letter, Innovation is entitled to its Expense Reimbursements without regard to whether any Transaction closes.

(b) <u>Monthly Advisory Fee</u>. A monthly advisory fee (the "Monthly Advisory Fee") in the amount of ten thousand dollars ($10,000) per month due on the first (1st) of each month. If the first (1st) of a month falls on a Saturday or Sunday, the Monthly Advisory Fee shall be due on the first business day following the first (1st) of that month. The first Monthly Advisory Fee shall be due upon execution of the Engagement Letter. It is agreed that fifty percent (50%) of the Monthly Advisory Fee(s) shall be credited against the DIP Financing Fee or the Restructuring Transaction Fee or Sale Transaction Fee, if any (the Monthly Advisory Fee, the DIP Financing Fee, Restructuring Transaction Fee and Sale Transaction Fee (defined below) are collectively referred to as the "Success Fees"). Notwithstanding the due date of such Monthly Advisory Fee, however, payment of any Monthly Advisory Fee shall be after application to the Court and shall be subject to any order entered by the Court including any order approving interim compensation procedures.

- 6 -

Case: 10-48268   Doc# 134   Filed: 09/28/10   Entered: 09/28/10 11:23:01   Page 6 of 34

(c)     <u>Restructuring Transaction Fee.</u> If the Transaction takes the form of a Restructuring, and *if Innovation is expressly authorized by the Debtors, by written addendum to the Engagement Letter, to expand its scope of work to include Restructuring services*, the Debtors will pay an additional fee (the "Restructuring Transaction Fee") equal to one percent (1.0%) of the Debtors' Restructured Liabilities. The Restructuring Transaction Fee is payable at the closing of the Transaction.

(d)     <u>Sale Transaction Fee.</u> If the Transaction takes the form of an acquisition and/or a change of control resulting in the sale of more than 50.0% of either the economic or voting interests to a third party, and *if Innovation is expressly authorized by the Debtors, by written addendum to the Engagement Letter, to expand its scope of work to include a Sale Transaction*, the Debtors will pay an additional fee (the "Sale Transaction Fee") equal to two hundred thousand dollars ($200,000) plus two percent (2.0%) of the Aggregate Consideration actually received by the Debtors from the Transaction with a minimum total Sale Transaction Fee equal to three hundred thousand dollars ($300,000). Except as otherwise provided herein, the Transaction shall be deemed to have been consummated upon the closing of a sale, merger or acquisition of all of the equity interests in, or substantially all of the assets of the Debtors, including Siena. The Sale Transaction Fee is payable at the closing of the Transaction.

(e)     <u>DIP Financing Fee.</u> Payment of four percent (4.0%) of the aggregate senior debt related to a DIP Financing (the "DIP Financing Fee") raised, committed or contributed to the Transaction, with a minimum DIP Financing Fee equal to $50,000. The DIP Financing Fee is payable at the closing of the Transaction.

## B.     Application to the Court for Approval of Compensation.

Innovation intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the applicable Federal Rules of Bankruptcy Procedure, the Bankruptcy Local Rules, and Orders of this Court.

- 7 -

The Debtors believe that the Fee and Expense Structure set forth in the Engagement Letter includes reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Innovation and the fee structures typically utilized by leading financial advisors of similar stature to Innovation for comparable engagements, both in and out of court. The Fee and Expense Structure is consistent with Innovation's normal and customary billing practices for cases of this size and complexity that require the scope of services outlined. In particular, the Debtors believe that the Fee and Expense Structure creates a proper balance between contingency fees and out-of-pocket expenses.

Pursuant to sections 327(a) and 328 of the Bankruptcy Code and Bankruptcy Rule 2016, the Debtors are seeking approval of Innovation's retention without Innovation being required, in its invoices and applications submitted pursuant to the Court, to (a) maintain receipts for expenses in amounts less than $75 and (b) maintain time records for services rendered by Innovation's professionals or conform to any schedule of hourly rates.

Requiring Innovation to submit detailed time records for the professional services would unduly burden the estates and Innovation. Professionals that provide similar services in the ordinary course of the Debtors' businesses do not generally record their time. Furthermore, Innovation, when providing services to clients outside of Chapter 11, does not record its time for services provided.

**C.      Indemnification Provisions**.

The Engagement Letter, and Schedule A appended thereto, provide that the Debtors will indemnify, hold harmless, reimburse, defend, and provide contribution to Innovation, its affiliates, and their respective directors, officers, employees, advisors and other representatives (collectively, the "Indemnified Parties") under certain circumstances (such indemnification obligation being referred to as the "Indemnification Provisions"). The Debtors, however, will not indemnify or reimburse the Indemnified Parties for acts

- 8 -

LA/331966.1

involving gross negligence or willful misconduct, as determined by a court of competent jurisdiction in a final judgment. The Indemnification Provisions, as modified by the proposed form of order authorizing Innovation's retention, reflect the qualifications and limits on such terms that are customary in this jurisdiction and are in substantially the same form as terms that were approved by this Court in other cases.

Accordingly, the Debtors and Innovation Capital believe that the Indemnification Provisions are customary and reasonable for engagements of this type and should be approved in these cases.

## IV.

## CONNECTIONS WITH THE DEBTORS AND OTHER PARTIES

Section 327(a) of the Bankruptcy Code provides for the appointment of a professional where that person does not possess any interest materially adverse to a debtor with regard to the matters that will be handled by such person and where the professional is a disinterested person.

Innovation has informed the Debtors that, except as qualified in the Sodl Declaration, Innovation has no material connection with the Debtors, their creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee for the Northern District of California (the "U.S. Trustee"), or any person employed by the office of the U.S. Trustee in the above-captioned Cases.

Based on the Sodl Declaration, the Debtors believe Innovation (a) does not hold or represent any interest adverse to the Debtors or their estates, and (b) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code. The Debtors' knowledge, information, and belief regarding the matters set forth herein are based, and made in reliance upon, the Sodl Declaration.

The Debtors have been advised that no managing director or employee of Innovation is related or connected to any employee of the Office of the United States

- 9 -

Trustee for the Northern District of California or the Office of the Clerk of Court for the United States Bankruptcy Court for the Northern District of California. Also, no managing director or employee of Innovation is related or connected with any of the Bankruptcy Judges currently serving in the United States Bankruptcy Court for the Northern District of California.

To the extent that Innovation discovers any additional facts bearing on the matters described herein during the period of Innovation's retention, Innovation will supplement the information provided in the Sodl Declaration.

## V.

## NOTICE AND NO PRIOR APPLICATION

Notice of this Application has been provided to the Office of the United States Trustee and all other parties entitled notice pursuant to this Court's Order Establishing Notice Procedures. The Debtors respectfully represent that such notice is sufficient, and requests that this Court find that no further notice of the relief requested herein is necessary or appropriate.

No prior application has been made for the relief requested herein to this or any other Court.

**WHEREFORE**, the Debtors believe that the retention and employment of Innovation is in the best interests of the Debtors, and their Estates and creditors, and the Debtors respectfully request that this Court: (i) approve the employment and retention of Innovation, in the form of Order attached hereto as Exhibit "1", and as noted in this Application, as exclusive financial advisor and placement agent to the Debtors effective as of September 20, 2010, as set forth in this Application, and (ii) grant such other, further relief as is just and proper.

*[Signatures on following pages]*

- 10 -

| | |
|---|---|
| 1 | Dated: September 28, 2010           **Managing Member of the Debtors** |
| 2 | |
| 3 | |
| 4 | By*: [see attached]* _____ |
| |      Barney Ng |
| 5 | |
| 6 | Dated: September 28, 2010           **ARENT FOX LLP** |
| 7 | |
| 8 | By: */s/ Mette H. Kurth* _____ |
| 9 |      Mette H. Kurth |
| |      Aram Ordubegian |
| 10 |      Andy S. Kong |
| |      *Proposed* General Bankruptcy and |
| 11 |      Restructuring Counsel for Debtors and |
| |      Debtors-in-Possession |

- 11 -

on the matters described herein during the period of Innovation's retention, Innovation will supplement the information provided in the Sodl Declaration.

*V.*

## NOTICE AND NO PRIOR APPLICATION

*AN.* Notice of this Application has been provided to the Office of the United States

*AO.* Trustee and all other parties entitled notice pursuant to this Court's Order Establishing Notice Procedures. The Debtors respectfully represent that such notice is sufficient, and requests that this Court find that no further notice of the relief requested herein is necessary or appropriate.

*AP.* No prior application has been made for the relief requested herein to this or any

*AQ.* other Court.

**WHEREFORE**, the Debtors believe that the retention and employment of Innovation is in the best interests of the Debtors, and their Estates and creditors, and the Debtors respectfully request that this Court: (i) approve the employment and retention of Innovation, in the form of Order attached hereto as Exhibit "1", and as noted in this Application, as exclusive financial advisor and placement agent to the Debtors effective as of September 20, 2010, as set forth in this Application, and (ii) grant such other, further relief as is just and proper.

*[signatures on following page]*

Dated: September 22, 2010      **Managing Member of the Debtors**

By: _____
     Barney Ng

Dated: September 22, 2010      **ARENT FOX LLP**

By: _____
     Aram Ordubegian
     Andy S. Kong
     *Proposed* General Bankruptcy and
     Restructuring Counsel for Debtors and
     Debtors-in-Possession

# EXHIBIT "1"

Aram Ordubegian (SBN 185142)
Mette H. Kurth (SBN 187100)
Andy S. Kong (SBN 243933)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone:     213.629.7400
Facsimile:     213.629.7401
Email:          ordubegian.aram@arentfox.com
                kurth.mette@arentfox.com
                kong.andy@arentfox.com

*Proposed* General Bankruptcy and Restructuring
Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| In re: | Case No. 4:10-bk-48268-RJN |
|---|---|
| **HI-FIVE ENTERPRISES, LLC**, a California limited liability company; **ONE SOUTH LAKE STREET, LLC**, a Nevada limited liability company; and **WILD GAME NG, LLC**, a Nevada limited liability company d/b/a The Siena Hotel Spa & Casino, | [Jointly Administered with Case Nos. 4:10-bk-48272-RJN and 4:10-bk-48270-RJN]<br><br>Chapter 11<br><br>**[PROPOSED] ORDER AUTHORIZING THE EMPLOYMENT OF INNOVATION CAPITAL, LLC AS EXCLUSIVE FINANCIAL ADVISOR AND PLACEMENT AGENT FOR THE DEBTORS AND DEBTORS-IN-POSSESSION IN CONNECTION WITH PLACEMENT OF DIP FINANCING AND RELATED TRANSACTIONS, EFFECTIVE AS OF SEPTEMBER 20, 2010** |
|         Debtors and Debtors-In-Possession. | |
| [X]  Affects all Debtors | |
| [ ] Applies only to Hi-Five Enterprises, LLC | |
| [ ] Applies only to One South Lake Street, LLC | |
| [ ] Applies only to Wild Game Ng, LLC | *[No Hearing Required Pursuant to B.L.R. 9014-1(b)]* |

**IN THIS DISTRICT, AT OAKLAND, CALIFORNIA, ON THE DATE INDICATED BELOW:**

This matter came before the Honorable Randall J. Newsome, United States Bankruptcy Judge, to consider on an *ex parte* basis pursuant to B.L.R. 9014-1(b), the *Application for an order authorizing the retention and employment of Innovation Capital, LLC* ("Innovation") *as exclusive financial advisor and DIP financing placement agent for the Debtors in connection with placement of DIP financing and related transactions, effective as of September 20, 2010.* (the "Application") filed by Hi-Five Enterprises, LLC ("Hi-Five") and joined in by its debtor affiliates, One South Lake Street, LLC ("One South") and Wild Game Ng, LLC ("Wild Game", and collectively with Hi-Five and One South, the "Debtors"). The Debtors appeared through their counsel of record, Aram Ordubegian of Arent Fox LLP. All other appearances are as reflected on the record.

The Court has reviewed and considered the Application; the Declaration of Matthew J. Sodl filed in support of the Application; all other documents submitted in connection with the Application; all arguments and representations of counsel at the hearing, ; and the record in these cases. Based upon that review and consideration, the Court finds that: (1) notice of the Application was adequate and appropriate under the circumstances and no other notice need be given; (2) Innovation neither represents nor holds any interest adverse to the Debtors or to their estates as to the matters upon which it is to be engaged and is disinterested under sections 101(14) and 327(a) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; (3) the relief requested in the Application is in the best interests of the Debtors, their estates and their creditors; (3) the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and (4) other good and sufficient cause exists for granting the relief requested in the Application.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** in its entirety;

2. The Debtors, as debtors and debtors in possession, are authorized to employ and retain Innovation in connection with the Transaction on the terms and conditions

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 10-48268    Doc# 134    Filed: 09/28/10    Entered: 09/28/10 11:23:01    Page 15 of 34

set forth in the Engagement Letter, effective _nunc pro tunc_ to September 20, 2010.

3. The terms of Innovation's employment, including the Fee and Expense Structure, are approved, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016.

4. Innovation shall be compensated in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code and such Bankruptcy Rules and Local Rules as applicable, and such procedures as may be fixed by order of this Court; _provided_, _however_, Innovation is permitted to (a) not maintain receipts for expenses in amounts less than $75 and (b) not maintain time records for services rendered by Innovation's professionals.

5. The Debtors are authorized to pay Innovation's fees and reimburse Innovation for its costs and expenses as provided in the Engagement Letter, upon approval by the Court of interim and final applications and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code and such Bankruptcy Rules and Local Rules as may then be applicable, from time to time, and such procedures as may be fixed by order of this Court.

6. The Indemnification Provisions are approved during the pendency of the Debtors' bankruptcy cases.

7. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

8. Notwithstanding any provision contained in the Engagement Letter, this Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or in relation to the implementation and interpretation of this Order.

9. The terms of this Order shall be immediately effective and enforceable upon its entry.

1  Dated: _September_____, 2010
2          Oakland, CA

3                              [PROPOSED ORDER]_____

4                              UNITED STATES BANKRUPTCY JUDGE

5

6

7  APPROVED AS TO FORM

8

9  /s/_____
   Lynette C. Kelly
10 Office of the United States Trustee

11

12                          **END OF ORDER**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

1  **COURT SERVICE LIST**

2

3    Bank Wyoming
     435 Arapahoe
4    Thermopolis, WY 82443-1232

5    Creditors Bureau USA
     757 "L" Street
6    Fresno, CA 93721

7    GE Money Bank
     c/o Recovery Management Systems Corp.
8    25 SE 2nd Avenue, Suite 1120
     Miami, FL 33131-1605
9    Attn: Ramesh Singh

10   IGT
     9295 Prototype Dr.
11   Reno, NV 89521

12   Internal Revenue Service
     P.O. Box 21126
13   Philadelphia, PA 19114

14   Jennifer A. Smith
     Lionel, Sawyer and Collins
15   1100 Bank of America Plaza
     50 West Liberty Street
16   Reno, NV 89501

17   John F. Murtha
     Law Offices of Woodburn and Wedge
18   6100 Neil Rd. #500
     Reno, NV 89511
19
     Konami Gaming, Inc.
20   585 Trade Center Drive
     Las Vegas, NV 89521
21
     Lisa S. Gretchko, Esq.
22   Howard & Howard Attorneys PLLC
     450 West Fourth Street
23   Royal Oak, MI 48067

24   Michael E. Wilson
     Chief Deputy Attorney General
25   5420 Kietzke Ln. #202
     Reno, NV 89511
26
     PDS Gaming Corporation-Nevada
27   6280 Annie Oakley Drive
     Las Vegas, NV 89120
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

| | |
|---|---|
| 1 | Randy Munn Office of the City Attorney |
| | City of Reno |
| 2 | 1 E 1st St. |
| | Reno, NV 88501 |
| 3 | |
| | Raymond Leasing Corporation |
| 4 | P.O. Box 130 |
| | Greene, NY 13778 |
| 5 | |
| | RE Reno LLC |
| 6 | c/o Jeffrey C. Krause |
| | Stutman Treister & Glatt |
| 7 | 1901 Avenue of the Stars, 12th Floor |
| | Los Angeles, CA 90067 |
| 8 | |
| | Wells Fargo Bank, National Association |
| 9 | 3800 Howard Hughes Parkway, 4th Floor |
| | Las Vegas, NV 89109 |
| 10 | |
| | Young Electric Sign Company |
| 11 | 775 E. Glendale Ave. |
| | Sparks, NV 89101 |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

# EXHIBIT "2"

September 20, 2010

Barney Ng
Managing Member
Wild Game Ng, LLC
1 South Lake Street
Reno, NV 89501

      Re: <u>Financial Advisory Engagement</u>

Dear Mr. Ng:

This letter agreement (the "Agreement") will confirm the understanding between Wild Game Ng, LLC (the "Company" or "Wild Game") and Innovation Capital, LLC ("Innovation") pursuant to which Innovation has been retained, on the terms and subject to the conditions set forth herein, as the exclusive financial advisor to the Company in connection with a possible recapitalization, restructuring, reorganization, rescheduling or refinancing of all or any material portion of the Company's liabilities (the "Restructuring); a sale, merger or acquisition of all of the equity interest in, or substantially all of the assets of Wild Game, including the Siena Hotel Spa and Casino ("Siena") in Reno, California; and as exclusive placement agent with regard to any Debtor-in-Possession ("DIP") financing associated with any of the foregoing (collectively, the "Transaction").

1.    <u>Retention.</u> The Company hereby retains Innovation as its exclusive financial advisor as set forth herein in connection with the Transaction. In addition to Innovation's role as exclusive financial advisor, Innovation is hereby retained as exclusive placement agent with respect to any financing as defined below. In the event that the Company or its management receives any inquiry regarding a Transaction, they will promptly inform Innovation so that Innovation can evaluate such party, its interest and assist the Company in any resulting negotiations. The parties agree that Innovation is primarily retained as a placement agent with regard to securing DIP financing, and that Innovation will not undertake any activities or incur any expense with regard to a Restructuring without first receiving written authorization from Company.

2.    <u>Fees.</u> Upon Closing of a Transaction during the term of this Agreement, the Company agrees to pay the following success fees ("Success Fees") to Innovation:

    a)  **DIP Financing Fee:** Four percent (4.0%) of the aggregate senior debt related to a DIP financing (the "DIP Financing Fee") raised,

**Main Office:**                              **Administrative Office:**
222 North Sepulveda Blvd., Suite 2175    **Innovation Capital, LLC**    7852 South Elati Street, Suite 100
El Segundo, CA 90245                                      Littleton, CO 80120
(310) 335-9232                  **Member FINRA/SIPC**            Tel (303) 389-4320

Case: 10-46268   Doc# 134   Filed: 09/28/10   Entered: 09/28/10 14:23:07   Page 21 of 34

committed or contributed to the Transaction, with a minimum DIP Financing Fee equal to $50,000.

b) **Restructuring Transaction Fee:** If the Transaction takes the form of a Restructuring, the Company agrees to pay a fee (the "Restructuring Transaction Fee") equal to one percent (1.0%) of the Company's Restructured Liabilities.

c) **Sale Transaction Fee:** If the Transaction takes the form of an acquisition of the Company and/or a change of control resulting in the sale of more than 50.0% of either the economic or voting interests in the Company to a third party, the Company agrees to pay a fee (the "Sale Transaction Fee") equal to two hundred thousand dollars ($200,000) plus two percent (2.0%) of the Aggregate Consideration actually received by the Company in the Transaction with a minimum total Sale Transaction Fee equal to three hundred thousand dollars ($300,000).

d) **Monthly Advisory Fee:** Monthly advisory fee (the "Monthly Advisory Fee") in the amount of ten thousand dollars ($10,000) per month due on the first (1st) of each month. If the first (1st) of a month falls on a Saturday or Sunday, the Monthly Advisory Fee shall be due on the first business day following the first (1st) of that month. The first Monthly Advisory Fee shall be due upon execution of this Agreement. It is agreed that fifty percent (50.0%) the Monthly Advisory Fee(s) shall be credited against the DIP Financing Fee, Restructuring Transaction Fee and Sale Transaction Fee. Notwithstanding the due date of such Monthly Advisory Fee, however, payment of any Monthly Advisory Fee shall be after application to the Bankruptcy Court and shall be subject to any order entered by the Bankruptcy Court including any order approving interim compensation procedures.

The "Restructured Liabilities" shall include all debt securities, claims, debts, litigation claims, and other indebtedness or liabilities that are forgiven, compromised, modified or otherwise affected by a Transaction consummated in connection with services Innovation provides hereunder.

For purposes of calculating the Sale Transaction Fee provisions of paragraph 2.(c), the "Aggregate Consideration" shall include, without duplication, the fair market value of any of the following in connection with a Transaction: (i) all cash paid to the Company; (ii) straight or convertible debt instruments or other obligations provided to the Company or its security holders in connection with a Transaction; (iii) interest bearing debt (including capitalized leases) assumed or refinanced and pension liabilities assumed in connection with a Transaction; (iv) amounts paid to, the Company or its respective security holders or its respective directors in connection with a non-competition agreement which is executed in

Case: 10-48208    Filed: 09/28/10    Entered: 09/28/10 11:23:40    Page 22 of 34

connection with a Transaction; (v) amounts paid to security holders, the Company or their respective affiliates in connection with consulting, lease, royalty, licensing or any similar agreement which is executed in connection with a Transaction; (vi) extraordinary amounts paid, at any time during Innovation's period of engagement, as dividends or other compensation to security holders of the Company in contemplation of a Transaction and (vii) any security holder's obligations, including transaction expenses, which are assumed by a purchaser or any third party other than the Company or any of its affiliates in connection with a Transaction.  Notwithstanding the foregoing, if certain amounts of the Aggregate Consideration are to be paid at a date or dates past the Closing date of the Transaction (e.g., earn-outs, lease agreements, royalty payments, licensing fees, installment payments, promissory notes, amounts payable under non-compete or similar agreements, amounts paid into escrow, unvested warrants, unvested options, unvested stock appreciation rights etc.) whether or not paid on a contingent basis, then for the purposes of the calculation of Aggregate Consideration, the Company and Innovation will negotiate in good faith to agree on that portion, if any, of the Sale Transaction Fee with respect to such post-closing Aggregate Consideration to be paid to Innovation as of the Closing of the Transaction.

The parties hereto agree that the purchase price contained in the definitive acquisition or shareholder agreements executed at Closing shall be deemed to accurately state the Aggregate Consideration received by the Company for purposes of this Agreement and payment of Sale Transaction Fees.

Any Success Fees or unpaid expenses owing to Innovation shall be paid at the closing of the Transaction (the "Closing"). The Success Fees shall be paid separately to Innovation by withholding the aggregate amount due from the initial proceeds of the Transaction at the Closing.  The Closing is expressly conditioned on the concurrent payment by the Company of such amount owed to Innovation.  In the case of a dispute, any portion of the Success Fees not in dispute shall be paid to Innovation upon Closing.

Without regard to whether any Transaction closes, Innovation shall be entitled to reimbursement of all necessary and reasonable out-of-pocket expenses incurred during this engagement.  Such expenses may include, but are not limited to, travel and lodging, direct identifiable data processing and communication charges, courier services, legal fees and other necessary expenditures.  Upon presentment of any invoice setting forth in reasonable detail the nature and amount of Innovation's expenses, such invoice shall be paid within 10 days of receipt by the Company.  Any unpaid expenses owing to Innovation shall be paid at the Closing of the Transaction.  Innovation agrees that it will not incur any expenses in excess of $5,000 dollars without first receiving written authorization from Company.

3.     Term. The term of this Agreement shall, except as otherwise provided herein, run for a period of twelve (12) months from the date hereof, and

Case: 10-48208    Doc# 134    Filed: 09/28/10    Entered: 09/28/10 11:23:30    Page 23 of 34

such period shall be automatically extended on a month-to-month basis; provided that either Innovation or the Company may terminate this Agreement or such extension at any time upon 30 days' prior written notice to the other party. Notwithstanding anything to the contrary in the foregoing, the provisions of paragraph 2 and paragraph 5 shall inure to the benefit of Innovation for a period of 12 months from the date of termination with respect to any Transaction in which the acquirer is a party whom Innovation contacts regarding such Transaction during the course of this Agreement, even if the Closing occurs after the expiration or termination of this Agreement.

4.      <u>Offering Materials</u>. The Company will assist Innovation with the preparation of descriptive materials with respect to the Company and the Transaction (which descriptive materials, together with any supplements, exhibits or other attachments thereto, are hereafter referred to as the "Offering Materials"). The Company represents that the Offering Materials will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make statements contained therein, in light of the circumstances under which they were made, not misleading. The Company agrees to advise Innovation immediately of the occurrence of any event or any other change known to it which results in the Offering Materials containing an untrue statement of a material fact or omitting to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading. The Company agrees herein that it will not use the Offering Materials outside of the scope of the Transaction contemplated in this Agreement.

The Company agrees to authorize Innovation, as its exclusive financial advisor and placement agent, to transmit a copy or copies of the Offering Materials to prospective parties to the Transaction that have been approved by the Company in advance along with any other document or information supplied to Innovation for the transmission to a prospective party by or on behalf of the Company or by any of the Company's officers, representatives or agents, in connection with the performance of Innovation's services hereunder or any Transaction contemplated hereby. The Company shall afford or cause to be afforded to Innovation and its representatives reasonable access, during normal business hours, to all properties and records of the Company for the purpose of preparing Offering Materials.

5.      <u>Other Transactions</u>. If, during the term of this Agreement, and as a result of the efforts and introductions of Innovation, the Company determines to raise external funds or enter into another transaction (other than as contemplated by the other provisions of this Agreement) with any entity contacted by Innovation, the Company shall be obligated to compensate

**Main Office:**      **Administrative Office:**
222 North Sepulveda Blvd., Suite 2175    **Innovation Capital, LLC**    7852 South Elati Street, Suite 100
El Segundo, California 90245      Littleton, Colorado 80120
Tel (310) 335-9333      **Member: FINRA/SIPC**      Tel (303) 339-4520

Case: 10-48208   Doc# 134   Filed: 09/28/10   Entered: 09/28/10 11:23:00   Page 24 of 34

Innovation for its services in structuring the other Transaction and introducing the parties. For the services rendered pursuant to this paragraph, the Company agrees to pay Innovation, or to cause Innovation to be paid, fees comparable to those customarily charged by investment banking firms in similar transactions, such fees to be paid upon the consummation of such transaction.

6.      Work Product. Innovation's advice shall be the property of Innovation. Innovation's advice may not be disclosed to other persons or entities by any party to this Agreement without prior written permission of the other parties to this Agreement unless such disclosure is required by law.

7.      Confidentiality. Innovation will hold confidential and will not disclose to any third parties, other than prospective acquirers or such acquirers' financing sources, any proprietary information about the Company or Siena, including but not limited to their respective business plans, financial data, financial projections and terms of the Transaction. Any disclosures of such confidential information concerning to such prospective acquirers or financing sources will only be made pursuant to customary confidentiality agreements executed in advance between the Company and such acquirers.

8.      Indemnity. In partial consideration for the services to be rendered hereunder, the Company agrees to indemnify and contribute to Innovation and certain other indemnified persons in accordance with the terms of Schedule A attached hereto, which is incorporated herein by reference.

The Company also agrees to reimburse Innovation and the other indemnified persons set forth on Schedule A for any costs and expenses, whatever kind or nature, which Innovation may incur, or be subject to (arising out of Innovation's engagement hereunder), as a party, expert witness or participant in connection with any dispute or litigation involving the Company. This cost and expense reimbursement obligation includes all out-of-pocket expenses (including travel costs and attorney fees) and payment for all Innovation staff members' time at standard hourly rates in effect at the time rendered to the extent Innovation attends, prepares for, or participates in meetings, hearings, depositions, trials and all other proceedings, including travel time. The losing party in any legal action to enforce this cost and expense reimbursement obligation shall pay all costs of such action, including any sum as the court may fix as reasonable attorney fees.

9.      Conditions of Transaction. Innovation agrees to use its best efforts, consistent with its business judgment, to effect the Transaction as soon as practicable. The Transaction is subject to final approval by the Managing Member of the Company, approval by the United States Bankruptcy Court for the Northern District of California, or if venue of the case is

Case: 10-48268    Doc# 134    Filed: 09/28/10    Entered: 09/28/10 11:23:10    Page 25 of 34

transferred, such other bankruptcy court as shall have jurisdiction over the Company's pending Chapter 11 bankruptcy case (the "Bankruptcy Court"), documentation reasonably acceptable to the Company, market conditions, and satisfaction of the conditions set forth in the one or more agreements (collectively, the "Definitive Agreement") to be entered into by and between the Company and the interested parties named therein.

10.    <u>No Unauthorized Reference to Innovation</u>.  Except as permitted by paragraph 6 of this Agreement, no advice rendered by Innovation in connection with the services performed by Innovation pursuant to this Agreement will be quoted, nor will any such advice that attributes the advice to Innovation be referred to, in any report, document, release or other communication, whether written or oral, prepared, issued or transmitted by the Company or any person or corporation controlling, controlled by or under common control with the Company or any director, officer, employee, or representative of any thereof, without Innovation's prior written authorization, or except as otherwise required by law.

11.    <u>Survival</u>. The indemnification and contribution obligation contained in Schedule A hereto and the representations and warranties of the Company and the provisions of paragraph 2, 3, and 5 contained in this Agreement shall remain operative and in full force and effect regardless of (a) any investigation made by or on behalf of Innovation, by or on behalf of any person controlling Innovation, by or on behalf of any other Indemnified Party (as defined in Schedule A hereto) or by or on behalf of the Company, (b) acceptance of any Transaction by any of the sources, or (c) any termination of this Agreement, provided that the obligations of the Company contained in this Agreement (other than the obligation contained in the provisions of paragraph 2, 3 and 5 of this Agreement and in Schedule A hereto) shall terminate at the Closing. The indemnity, contribution and expense reimbursement obligations of the Company contained in Schedule A hereto shall be in addition to any liability the Company may otherwise have.

12.    <u>Notice</u>.  Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) to the Company's offices at 1 South Lake Street, Reno, CA 89501, Attention: Barney Ng, Managing Member, and (b) the Company's bankruptcy counsel, Arent Fox, LLP, at 555 5th Street, Los Angeles, California 90013, Attention: Mette H. Kurth and Aram Ordubegian, and (c) to Innovation, 222 North Sepulveda Boulevard, Suite 2175, El Segundo, CA 90245, Attention: Matthew J. Sodl, Managing Director.  Notice shall be effective upon receipt.

13.    <u>Third Party Beneficiaries</u>. This Agreement has been and is made solely for the benefit of the Company, Innovation and the other indemnified

Case: 10-48268   Filed: 09/28/10   Entered: 09/28/10 11:23:10   Page 26 of 34

persons referred to in Schedule A hereof, and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

14.  Construction. This Agreement incorporates the entire understanding of the parties and supersedes all previous agreements between the Company and Innovation should they exist and shall be governed by, and construed in accordance with, the laws of the State of Nevada, without regard to principles of conflicts of law.

15.  Jurisdiction/Venue. The parties agree that any dispute arising under this Agreement shall be heard in the Bankruptcy Court. The parties agree to waive the right to a jury trial on any disputes arising hereunder.

16.  Headings. The paragraph headings in this Agreement have been inserted as a matter of convenience of reference and are not part of this Agreement.

17.  Announcement. Innovation may utilize the Company's and/or Siena's name, logo and transaction description in its tombstone announcements, firm literature, promotional and advertising materials. Any press releases by the Company and/or Siena regarding the Transaction shall make appropriate mention of Innovation and its role in the Transaction.

18.  Bankruptcy Court Approval. The Company shall use its best efforts to promptly apply to the Bankruptcy Court for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (A) this Agreement, including the indemnification agreement attached in Schedule A hereto, and (B) Innovation's retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company shall supply Innovation with a draft of such application and any proposed order authorizing Innovation's retention sufficiently in advance of the filing of such application and proposed order to enable Innovation and its counsel to review and comment thereon. Innovation shall have no obligation to provide any services under this Agreement in unless Innovation's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Innovation in all respects. Innovation acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Innovation's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that Innovation shall not be required to maintain time records and, provided

Case: 10-48208  Doc#: 1345  Filed: 09/28/10  Entered: 09/28/10 11:23:00  Page 27 of 34

further, that Innovation shall not be required to maintain receipts for expenses in amounts less than $75. The Company shall pay all fees and expenses of Innovation hereunder as promptly as practicable in accordance with the terms hereof.

With respect to Innovation's retention under sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that Innovation's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Innovation's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Innovation's services hereunder could not be measured merely by reference to the number of hours to be expended by Innovation's professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Innovation and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Innovation and that the actual time and commitment required of Innovation and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues which Innovation may be required to address in the performance of its services hereunder, Innovation's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Innovation's services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including the Success Fees) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Innovation at the request of the Company issuing fairness opinions or any other specific services not set forth in this Agreement. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Innovation and the appropriate party.

**Main Office:**                                                                    **Administrative Office:**
222 North Sepulveda Blvd., Suite 2175            **Innovation Capital, LLC**            7852 South Elati Street, Suite 100
El Segundo, California 90245                                                          Littleton, Colorado 80120
Tel (310) 335-9333                                        **Member: FINRA/SIPC**                        Tel (303) 339-4520

Case: 10-48268    Doc# 134    Filed: 09/28/10    Entered: 09/28/10 11:23:01    Page 28 of 34

Please sign and return the original to indicate your acceptance of the terms set forth herein, whereupon this letter and your acceptance shall constitute a binding agreement between the Company and Innovation.

Very truly yours,

Innovation Capital, LLC

By: _____
   Matthew J. Sodl
   Managing Director

Confirmed and agreed to on September __, 2010

Wild Game Ng, LLC

By: _____
   Barney Ng
   Managing Member

**Main Office:**                          **Administrative Office:**
222 North Sepulveda Blvd., Suite 2175     **Innovation Capital, LLC**     7852 South Elati Street, Suite 100
El Segundo, California 90245              Littleton, Colorado 80120
Tel (310) 335-9333                        **Member FINRA/SIPC**          Tel (303) 339-4520

Case: 10-48268   Doc# 1   Filed: 09/28/10   Entered: 09/28/10 17:21:20   Page 29 of
34

## SCHEDULE A

This Schedule A is pursuant to the letter dated September 20, 2010 and addressed to Wild Game Ng, LLC (the "Company") and Innovation Capital, LLC ("Innovation") (the "Letter"). Unless otherwise noted, all capitalized terms used herein shall have the meaning set forth in the Letter.

Since Innovation will be acting on behalf of the Company in providing financial advisory services pursuant to the Letter, and as part of the consideration for the agreement of Innovation to furnish its services under the letter, the Company agrees to indemnify and hold harmless Innovation and Innovation's affiliates, and the respective directors, officers, shareholders, employees, agents and controlling persons of Innovation and Innovation's affiliates (collectively, the "Indemnified Parties"), to the fullest extent lawful, against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, to which the Indemnified Parties may become subject arising out of or related to actions taken or omitted to be taken by an Indemnified Party pursuant to the terms of, or in connection with services rendered pursuant to, the Letter or any Transaction or proposed Transaction contemplated thereby or any Indemnified Party's role in connection therewith and to reimburse the Indemnified Parties for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; provided, however, the Company shall not be liable under the foregoing indemnity agreement in respect of any loss, claim, damage or liability if a court having jurisdiction shall have determined by a final judgment that such loss, claim, damage or liability resulted primarily from the willful misconduct or gross negligence of the Indemnified Parties. In addition, the Company shall not effect any settlement or release from liability in connection with any matter for which an Indemnified Party would have a right to indemnification from the Company, unless such settlement or release contains a release of the Indemnified Parties reasonably satisfactory in form and substance to them.

If for any reason the foregoing indemnification is unavailable to any Indemnified Party or insufficient to hold it harmless, the Company shall contribute to the amount paid or payable by the Indemnified Party as a result of such loss, claim, expense, damage, settlement or liability for which such indemnification is held unavailable or is insufficient in such proportion as is appropriate to reflect the relative benefits received or to be received by the Company on the one hand and the Indemnified Party on the other hand in connection with the services rendered by Innovation under the Letter. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law or otherwise, then the Company shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits but also the relative fault of the Company on the one hand and the Indemnified Parties on the other hand in connection with any actions or omissions or any other matters which result in any such loss, claim, expense, damage, settlement or liability as well as any other relevant equitable considerations. Notwithstanding the foregoing, the aggregate contribution of all Indemnified Parties to all losses, claims, damages, liabilities and expenses shall not exceed the amount of fees actually received by Innovation pursuant to the Letter. The Company agrees that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to in this paragraph.

The reimbursement, indemnity and contribution obligations of the Company set forth herein shall be in addition to any liability which the Company may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, and any such person. No Indemnified Party shall have any liability to the Company or any other person in connection with the services rendered pursuant to the Letter except for any liability for losses, claims, damages or liabilities finally judicially determined by a court having jurisdiction to have resulted primarily from actions taken or omitted to be taken by such Indemnified Party's willful misconduct or gross negligence. The foregoing provisions shall survive any termination of the relationship established by the Letter.

Case: 10-48268    Filed: 09/28/10    Entered: 09/28/10 11:23:30    Page 30 of 34

| In re: **Hi-Five Enterprises, LLC** | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 4:10-bk-48268 |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

A true and correct copy of the foregoing document described **APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT OF INNOVATION CAPITAL, LLC AS EXCLUSIVE FINANCIAL ADVISOR AND PLACEMENT AGENT FOR THE DEBTORS AND DEBTORS-IN-POSSESSION IN CONNECTION WITH PLACEMENT OF DIP FINANCING AND RELATED TRANSACTIONS, EFFECTIVE AS OF SEPTEMBER 20, 2010** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>September 28, 2010</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On <u>September 28, 2010</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>September 28, 2010</u> I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

<u>SERVED BY EMAIL</u>
Lynette C. Kelly on behalf of U.S. Trustee Office of the U.S. Trustee
lynette.c.kelly@usdoj.gov

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 28, 2010 | SIMONA FILIP | /s/ Simona Filip |
|---|---|---|
| Date | Type Name | Signature |

**ADDITIONAL SERVICE INFORMATION**

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") :**

Shawn M. Christianson on behalf of Creditor Oracle America, Inc.
schristianson@buchalter.com

Janet L. Chubb on behalf of Interested Party National Automobile Museum
jlc@jonesvargas.com, tbw@jonesvargas.com

Cecily A. Dumas on behalf of Creditor Konami Gaming, Inc.
cdumas@friedumspring.com, calas@friedumspring.com

Joseph D. Frank on behalf of Creditor Pepsi Beverages Company
jfrank@fgllp.com

Eric D. Goldberg on behalf of Creditor RE Reno, LLC
egoldberg@stutman.com

Geoffrey A. Heaton on behalf of Creditor Committee Official Committee of General Unsecured Creditors for Hi-Five Enterprises, LLC
gheaton@duanemorris.com

Lynette C. Kelly on behalf of U.S. Trustee Office of the U.S. Trustee/Oak
lynette.c.kelly@usdoj.gov

William J. Lafferty on behalf of Creditor NV Energy, Inc.
wlafferty@howardrice.com, aray@howardrice.com;jbeyl@howardrice.com;calendar@howardrice.com

Melissa Lor on behalf of Creditor International Game Technology
MLor@Schnader.com, wreinig@schnader.com

Daniel A. McDaniel on behalf of Creditor General Produce Co., Ltd.
damplc@pacbell.net

Office of the U.S. Trustee/Oak
USTPRegion17.OA.ECF@usdoj.gov, ltroxas@hotmail.com

Aron M. Oliner on behalf of Creditor Committee Official Committee of General Unsecured Creditors for Hi-Five Enterprises, LLC
roliner@duanemorris.com

John D. Suhr on behalf of Creditor Creditors Bureau USA
jsuhr@fresnocredit.com, val@fcbcbc.com;jeanne@fcbcbc.com

## II. **SERVED BY U.S. MAIL:**

Chief Judge Randall J. Newsome
U.S. Bankruptcy Court
Attention: Chambers Copies
P O Box 2070
Oakland, CA 94604-2070

RE Reno LLC
c/o Jeffrey C. Krause
Stutman Treister & Glatt
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

IGT
9295 Prototype Dr.
Reno, NV  89521

Konami Gaming, Inc.
585 Trade Center Drive
Las Vegas, NV 89521

Raymond Leasing Corporation
P.O. Box 130
Greene, NY 13778

PDS Gaming Corporation-Nevada
6280 Annie Oakley Drive
Las Vegas, NV 89120

Wells Fargo Bank, National Association
3800 Howard Hughes Parkway, 4th Floor
Las Vegas, NV 89109

Young Electric Sign Company
775 E. Glendale Ave.
Sparks, NV 89101

Bank Wyoming
435 Arapahoe
Thermopolis, WY 82443-1232

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

LA/336145.1

## REQUEST FOR SPECIAL NOTICE

Lisa S. Gretchko, Esq.
Howard & Howard Attorneys PLLC
450 West Fourth Street
Royal Oak, MI 48067

Randy Munn Office of the City Attorney
City of Reno
1 E 1st St.
Reno, NV 88501

John F. Murtha
Law Offices of Woodburn and Wedge
6100 Neil Rd. #500
Reno, NV 89511

Jennifer A. Smith
Lionel, Sawyer and Collins
1100 Bank of America Plaza
50 West Liberty Street
Reno, NV 89501

Michael E. Wilson
Chief Deputy Attorney General
5420 Kietzke Ln. #202
Reno, NV 89511

GE Money Bank
c/o Recovery Management Systems Corp.
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605
Attn: Ramesh Singh

Creditors Bureau USA
757 "L" Street
Fresno, CA 93721